In the Matter of the Estate of PHILIP LIBERMAN, Deceased. BERTHA LIBERMAN, Respondent; NORMAN J. LIBERMAN et al., as Executors and Trustees of PHILIP LIBERMAN, Deceased, et al., Appellants.

First Department, October 29, 1957.

*Lionel S. Popkin* of counsel (*Abraham S. Guterman* with him on the brief; *Hess Mela Segall Popkin & Guterman,* attorneys), for Norman J. Liberman and others, appellants.

*John J. Cray,* special guardian for Stuart Bruce and others, infants, appellant in person.

*James N. Vaughan* of counsel (*Vaughan & Lyons,* attorneys), for respondent.

RABIN, J. This is an appeal from a decree of the Surrogate granting the application of the petitioner-respondent pursuant to section 18 of the Decedent Estate Law, to take an elective share of the estate as widow of the decedent. The will of the decedent created a trust of one third of the residuary estate from which said petitioner was to receive income during her lifetime. Under subdivision 1 of section 18 of the Decedent Estate Law, such testamentary provision, with minor adjustments allowable by section 18 (subd. 1, pars. [f], [h]), precludes any right of election in the surviving spouse. Petitioner contends, however, and the Surrogate found that the aforesaid trust is illusory and, therefore, no bar to election.

The will, after directing payment of debts and expenses and making specific bequests of certain personal effects, divides the residuary estate into 15 equal parts. Of these, 5 parts are given in trust for the benefit of the petitioner as indicated and the children of the decedent are named as remaindermen. The other 10 parts are divided into equal life estates for decedent's 5 children. The aforesaid trusts for petitioner and the dece-

dent's children are all to be found in paragraph "THIRD" of the will.

It is paragraph "FOURTH" which is said to render nugatory the benefits to the petitioner profferred by the described provisions in paragraph "THIRD". Paragraph "FOURTH" specifies: "In the event that the income payable to any of my children from the trusts created under paragraph THIRD hereof should in any year be less than Four thousand ($4000.) Dollars, then and in such event I direct my trustees to pay out of the principal of the trust funds created under paragraph THIRD hereunder and from such of the trust funds as they in their sole and unreviewable discretion may determine, an amount equal to the difference between the total income payable to any of my said children pursuant to said trusts and the sum of Four thousand ($4000) Dollars." If, as petitioner urges, this language authorizes invasion of the corpus of her trust during her life for the benefit of the children of the decedent, then the Surrogate was correct in treating the trust in which petitioner was the *cestui que trust* as illusory. (*Matter of Wittner,* 301 N. Y. 461; *Matter of Harris,* 7 Misc 2d 716.) But the executors and trustees acknowledge, indeed insist, that invasion for such purpose is not permitted. Apart from the estoppel that such present insistence would work in the event of any future effort to so invade corpus, we conclude that paragraph "FOURTH", properly construed, does not create the risk which petitioner hypothesizes.

Unlike *Wittner* or *Harris* (*supra*), this is not an instance where by "unambiguous language" the testator "must have intended" (301 N. Y. 461, 464) authority to invade petitioner's trust during her life for the benefit of his children. Viewed alone, the reference in paragraph "FOURTH" to invasion "of the principal of the trust funds created under paragraph THIRD" might be read either as dealing with the entirety of the trusts established by paragraph "THIRD" or as relating back to the language in paragraph "FOURTH" which talks of "the income payable to any of my children from the trusts created under paragraph "THIRD". Even if we were confined to paragraph "FOURTH", however, it would appear to authorize the invasion only of the children's trusts since the critical language permitting invasion of trust corpus is followed immediately by the provision which limits invasion to "an amount equal to the difference between the total income payable to any of my said children *pursuant to said trusts* and the sum of Four thousand ($4000) Dollars" (emphasis added) — "said trusts" plainly meaning the children's trusts.

But where testamentary language is, as here, apparently ambiguous, we are not confined to the unenlightening ambiguity. The context of the language is examined to ascertain, sustain and validate the testator's intention. (*Matter of Sliter,* 286 N. Y. 117, 122; *Matter of Knapp,* 168 Misc. 128; *Matter of Richards,* 150 Misc. 102.) When the will here is read in its entirety, there emerges the testator's intention to provide for the petitioner a trust invulnerable to invasion, during her life, for the benefit of his children.

While the will establishes the children's primary trusts by means of a single provision, the petitioner's trust is the subject of a separate provision in paragraph " THIRD ". The integrated reference to the children's trusts and their separation from petitioner's trust in the paragraph creating the trusts is the first indication that the testator did not intend the indiscriminate commingling of the children's trusts and petitioner's trust for the purpose of paragraph " FOURTH ". Again, while the will expressly authorizes invasion of the corpus of his children's trusts, it does not so authorize invasion of corpus of petitioner's trust whether for her benefit, or for the benefit of his children, or otherwise. The will does, however, explicitly state that the provisions for petitioner " are intended to be and shall be in lieu of dower, right of election to take her share as in case of intestacy or other common law or statutory rights in any of my property." Testator was chargeable with the knowledge that in the eye of the law an illusory trust is no adequate substitute for the petitioner's right of dower or election, and he must therefore be presumed to have intended her trust to be free during her life from invasion for the benefit of the children.

The precise purpose and import of paragraph " FOURTH " becomes more clear when seen, in conjunction with paragraph " FIFTH ", as contemplating the manner in which the corpus of the trusts for the decedent's children would be applied to meet special needs of those children. Thus, according to paragraph " FIFTH ", in case of " emergency or illness or misfortune " of one of decedent's children, the trustees may invade only the corpus of the trust established for the beneficiary suffering such ill fortune. Paragraph " FOURTH " covered the occasion of income to one of the children being less than $4,000 in any one year in which event invasion was not limited to the corpus of that child. When paragraph " FOURTH " is analyzed in its relation to paragraph " FIFTH ", the testator's concern with the children's trusts in paragraph " FOURTH " is plain: corpus was to be invaded for the benefit of a child who was either receiving less than $4,000 annual income or in distress;

in the latter instance invasion was limited to the trust of the benefited child (par. " Fifth "); in the former instance invasion was not so limited (par. " Fourth "); the context which paragraph " Fifth " thus supplies for paragraph " Fourth " establishes that the trusts contemplated by paragraph " Fourth " are those of decedent's children, not petitioner's trust.

We conclude, therefore, that the trust set up in decedent's will for the benefit of petitioner was not illusory and that, accordingly, there was no right of election on her part under section 18 of the Decedent Estate Law.

Apart from the foregoing there are other aspects of the case which, in our opinion, also require a reversal. Petitioner, Bertha Liberman, met the decedent prior to June, 1942 while she was still married to her first husband, from whom she subsequently obtained a Nevada divorce on June 2, 1942. On June 27, 1942 she and decedent were married by the recorder of the City of Union, New Jersey. Prior to that ceremony and on June 18, 1942, petitioner and decedent entered into a prenuptial agreement wherein the decedent agreed to bequeath the sum of $5,000 to the petitioner and she in turn waived all rights that she might otherwise have in the decedent's estate.

If the Nevada decree be considered as a valid dissolution of the marriage bond between petitioner and her first husband — and we think it must, since there is insufficient proof in the record to establish its invalidity — then the prenuptial agreement executed just prior to petitioner's marriage to the decedent on June 27, 1942, if valid, constitutes a waiver of any right on her part to claim against the decedent's estate (Decedent Estate Law, § 18). Petitioner claims, however, that, assuming the validity of the 1942 marriage, the prenuptial contract is not binding upon her because it was inequitable and unreasonably disproportionate to the means of the decedent and, further, because she did not understand it since she allegedly was unable to read or write English at the time it was executed. We think that on this record her proof is insufficient to establish that the waiver was invalid. In the absence of proof by petitioner that she was induced to execute the waiver because of fraud or overreaching on the part of the decedent, the waiver must be held valid (*Matter of Phillips*, 293 N. Y. 483). There the court said (p. 491): " But, in the absence of proof of facts from which concealment or imposition may reasonably be inferred, fraud will not be presumed. [citing cases] Such a presumption must have as its basis evidence of overreaching — the concealment of facts, misrepresentation or some form of deception." There

was no such proof in this case. Petitioner relies on *Pierce* v. *Pierce* (71 N. Y. 154) but in that case there was conclusive proof of fraud and deception on the part of the decedent which induced the wife to enter into the prenuptial agreement. It should be noted that at the time the *Pierce* case was decided (1877), antenuptial agreements were presumed to be invalid unless proven otherwise. Now, however, in view of the expression of public policy by the Legislature in amending section 18 of the Decedent Estate Law (L. 1930, ch. 174), that presumption no longer exists and a prenuptial agreement is presumed to be valid in the absence of proof of fraud, concealment or imposition (*Matter of Phillips, supra*). We find no such proof here.

In an apparent attempt to avoid the effect of the waiver signed by her, petitioner takes the position that the Nevada decree was invalid, that consequently the New Jersey marriage in June, 1942 was void and that, therefore, the waiver which she executed just prior to that marriage is of no effect. We disagree with these conclusions, for as indicated above, we find insufficient proof in the record to establish that the Nevada decree was void. Even if the New Jersey marriage were invalid, we hold nevertheless that the waiver is effective against a claimed subsequent religious marriage to which we refer hereinafter.

Petitioner, although repudiating the 1942 civil marriage, claims that on August 30, 1945 she contracted a valid religious marriage with decedent. This was after the death of her first husband on February 18, 1944. She urges that as far as this subsequent marriage is concerned the waiver executed in 1942 by her had no effect, but related solely to the civil marriage performed in June, 1942 which she now says is invalid. We see no merit in that contention. Without passing upon the legality of the claimed 1945 religious marriage, and assuming that it was valid, we believe that the waiver executed in 1942 was binding upon petitioner and applied to the religious marriage with the same force and effect as it did to the earlier civil marriage in 1942. The waiver was not expressly limited to the New Jersey marriage then about to take place. While reference was made to the then contemplated marriage, the waiver clearly envisioned more than that, for by its terms petitioner specifically agreed to waive her rights '' as widow ''. Thus the parties were speaking of the petitioner's rights in the case of widowhood. Consequently, the waiver would apply to any marriage prior to decedent's death.

At the time of the alleged religious marriage, the waiver agreement was still extant and there is nothing to indicate that it was the intention of the parties to revoke or cancel it. The parties having contracted the alleged religious marriage, while the waiver agreement was still in existence, it is reasonable to assume that it was the intention that the waiver should apply to that marriage in the absence of a showing to the contrary. Moreover, since the alleged religious marriage was entered into after the death of petitioner's first husband, which removed any impediment, the religious ceremony could very well be considered as a substitute for the earlier civil marriage in 1942 and the prenuptial agreement perforce would also relate to the religious marriage. It has been held that even where parties have been divorced and later remarried, an agreement to waive all rights in the other spouse's estate, executed in connection with the first marriage, applied as well to the marriage contracted after the divorce (*Matter of Wynne*, 194 Misc. 459). It was there said by Surrogate Delehanty (p. 463): '' The waiver was extant when deceased died. In it respondent in his then existing character as spouse expressly waived all claims to participate as such in the estate of deceased under our Decedent Estate Law. Under the waiver agreement — a mutual one — deceased waived any rights in respondent's estate ' at the time or *upon the death* of her said husband.' Respondent agreed to waive in equally broad fashion all his rights ' at the time or *upon the death* of his said wife.' The contention that because the parties thereafter were divorced and then remarried the agreement fails is a claim which runs counter to the very text of the agreement which speaks of a lifetime and not of a marriage. The parties contracted in their characters as husband and wife. There is no limitation on the purport of the agreement and none upon its future effectiveness.'' We think these views expressed by the learned Surrogate are sound and are equally applicable to this case. Here, in the waiver agreement petitioner unqualifiedly waived her rights '' as widow '' of the decedent. She did not become his widow until after the alleged religious marriage. Consequently, under the terms of the agreement itself, it must be held binding upon petitioner.

We conclude that the decree, insofar as appealed from, should be reversed and the petition dismissed, first, because the trust created in decedent's will for petitioner's benefit fully satisfied the requirements of section 18 of the Decedent Estate Law and, secondly, because the prenuptial agreement is a bar to any right of election.

The decree, insofar as appealed from, should be reversed and the petition dismissed, with costs and disbursements to appellants, payable out of the estate.

PECK, P. J., BREITEL, BOTEIN and FRANK, JJ., concur.

Decree so far as appealed from unanimously reversed and petition dismissed, with costs and disbursements to appellants, payable out of the estate. Settle order.