In the Matter of the Estate of OSCAR SUNSHINE, Deceased. ELIZABETH SUNSHINE et al., Respondents. MELVIN SUNSHINE, Appellant.

First Department, March 23, 1976

*John M. Hadlock* of counsel *(Donald P. Parson* and *Lawrence N. Chanen* with him on the brief; *Whitman & Ransom,* attorneys), for appellant.

*Nicholas R. Doman (William T. Livingston, III,* with him on the brief), attorney for Elizabeth Sunshine, respondent.

BIRNS, J. By this proceeding petitioner Elizabeth Sunshine, as surviving spouse of Oscar Sunshine, sought a decree deter-

mining the validity and effect of her election to take against the will of decedent.

Petitioner and decedent were married on December 15, 1964. It was a second marriage for both and each had a child by a previous marriage. Their respective ages were 43 and 62 years. Decedent died November 24, 1971. Prior to marriage each signed the antenuptial agreement which has been raised as a defense to the petition herein. The agreement was drawn by decedent's attorney. Petitioner was not represented by counsel at the signing. She asserted she did not receive a copy of the agreement when she signed it.

Present when the agreement was signed, besides the parties thereto, were decedent's attorney, two subscribing witnesses and a commissioner of deeds. The document was, procedurally, executed and acknowledged in accordance with the requirements of law (Decedent Estate Law, § 18, subd 9; EPTL 5-1.1, subd [f], par [2]).

The agreement provided that petitioner would receive $25,-000 free of all inheritance taxes, under decedent's will and additionally would be the beneficiary of a $25,000 policy on decedent's life to the extent of $20,000 for her and $5,000 for her 14-year-old daughter. It further provided that she waived her right of election under section 18 of the then existing Decedent Estate Law.

Petitioner claimed the agreement was not binding upon her, since at the time of its execution decedent did not inform her of the extent of his assets. She further claimed she did not read the paper before she signed it, but had she been given an opportunity to do so she would not have been able to understand its meaning or language because she had little proficiency in English and possessed a limited education. She conceded that she knew the nature of decedent's business and that he had a principal interest therein.

Under prevailing law and public policy, a duly executed antenuptial agreement is given the same presumption of legality as any other contract, commercial or otherwise. It is presumed to be valid in the absence of fraud (*Matter of Phillips,* 293 NY 483, 490-491; *Matter of Liberman,* 4 AD2d 512, 516-517, affd 5 NY2d 719, 721). A party seeking to attack the validity of the agreement has the burden of coming forward with the evidence showing fraud (*Matter of Phillips, supra; Matter of Liberman, supra).* Where an antenuptial agreement becomes the subject of litigation the courts will

exercise rigid scrutiny in exploring the circumstances within which such agreement was made '(*Matter of Phillips, supra)*, "[b]ut, in the absence of proof of facts from which concealment or imposition may reasonably be inferred, fraud will not be presumed. * * * Such a presumption must have as its basis evidence of overreaching—the concealment of facts, misrepresentation or some other form of deception." *(Matter of Phillips, supra,* p 491.)

There is no proof in this record of fraud or overreaching. The decedent did not misrepresent his assets or the nature of his holdings. Nor did he conceal any information; there is no evidence that he failed to particularize his assets and liabilities in order to deceive petitioner. While it may be that at the time of decedent's death his assets had increased noticeably from those he possessed at the time of the agreement, the evidence is insufficient to establish that "at the time the agreement was made, the provision for the [respondent] was disproportionate to the means of her intended husband." *(Matter of Phillips, supra,* p 490.)

The asserted facts that petitioner lacked a complete understanding of English, did not possess a higher education, did not have an attorney present, and did not read or receive a copy of the document at the time she executed it, do not, even in totality, lead to the conclusion that she was a victim of fraud or overreaching on the part of decedent when she signed the agreement.

Nor does the evidence establish that petitioner did not understand the document when she signed it. The agreement not only contained a promise to provide for petitioner under the will, but there were further stipulations which gave her child the proceeds of decedent's life insurance. It is reasonable to conclude that these provisions followed discussions between decedent and petitioner in advance of the execution of the agreement, and in fact there was testimony reflecting her understanding of the contents of the agreement.

In this case, unlike *Phillips,* there was evidence that petitioner complained about the agreement during her marriage. These complaints, in retrospect, would fortify the conclusion that she did have an understanding of the agreement's provisions when she executed it.

The history of the relationship between petitioner and decedent prior to the marriage demonstrates that he was very much concerned with her welfare, as evidenced by the fact

that on many occasions she consulted him with respect to her personal problems and that he helped her obtain a divorce from her first husband in Hungary. Further it appears that during the marriage he continued to treat her considerately in a material way.

Accordingly, on this record, we find the evidence insufficient to establish that petitioner's waiver of her right of election was invalid. *(Matter of Liberman,* 4 AD2d 512, affd 5 NY2d 719, *supra.)*

The decree holding that petitioner Elizabeth Sunshine did not waive her right to elect against the will of decedent Oscar Sunshine, and that petitioner had a limited right to take against said will, should be reversed on the law and the facts, with costs payable out of the estate and decree directed that petitioner has no right to elect to take against the will.

MURPHY and SILVERMAN, JJ., concur with BIRNS, J.; KUPFERMAN, J. P., and LUPIANO, J., dissent and would affirm on opinion of MIDONICK, S.

Decree, Surrogate's Court, New York County, entered on July 8, 1975, reversed, on the law and the facts, with $60 costs and disbursements payable out of the estate to appellant and respondent, and decree directed that petitioner has no right to elect to take against the will.