In the Matter of the Estate of ANNA ZACH, Also Known as ANNA YANDRASITS, Deceased. JOHN YANDRASITS, Respondent. IRA J. LIPMAN, as Executor of ANNA ZACH, Also Known as ANNA YANDRASITS, Deceased, Appellant.

First Department, January 19, 1989

APPEARANCES OF COUNSEL

*Franklyn A. Farris* of counsel *(Cimino & Prudenti,* attorneys), for respondent.

*Rona Klein* of counsel *(Epstein Becker & Green, P. C.,* attorneys), for appellant.

## OPINION OF THE COURT

WALLACH, J.

The estate of Anna Zach (Anna's estate), by its executor, appeals from an order of the Surrogate's Court, denying its motion for summary judgment dismissing the petition of John Yandrasits (John) to compel an accounting based on his claim to an elective share of Anna's estate.

Anna and John were married on December 19, 1970. About two weeks prior, on December 4, 1970, they entered into an antenuptial agreement (Agreement) by which John renounced any right to participate as a beneficiary of Anna's estate or to elect against her will. A few days later, on December 16, 1970, clearly in reliance upon the Agreement, Anna executed a will leaving half of her estate to a sister, a fourth to her mother, and a fourth to her brother, with rights of survivorship. The parties lived together as husband and wife for the next 15 years until Anna's death on October 16, 1985. After the issuance of letters testamentary to her executor, on or about February 18, 1986, John filed a notice of election pursuant to EPTL 5-1.1 to take a statutory spouse's share against the provisions of Anna's will. Shortly thereafter, on January 14, 1987, John filed a petition for a compulsory accounting pursuant to SCPA 2205. By notice of motion dated July 7, 1987, the executor moved for summary judgment dismissing John's application for a compulsory accounting on the ground that he had waived his right of election. Finding that triable issues of fact existed concerning this alleged waiver, the Surrogate's Court denied the motion.

On May 20, 1987, John was examined before trial in the course of which he identified as his own the signature at the foot of page 3 of the Agreement. While there is some equivocation with respect to that answer at a later point in the deposition, the affidavit he submitted in opposition to the

executor's motion for summary judgment did not place the genuineness of his signature in issue. On the contrary, in his opposing affidavit of July 13, 1987, he merely denied that he "knowingly" signed the antenuptial agreement, a stance entirely compatible with the balance of his deposition in which he insisted that he has no memory whatsoever of any discussions pertaining to the instrument, or any memory as to the facts and circumstances surrounding its execution. This posture of amnesia with respect to the Agreement is, in our view, insufficient to raise an issue of fact for trial.

"[A] duly executed antenuptial agreement is given the same presumption of legality as any other contract, commercial or otherwise. It is presumed to be valid in the absence of fraud" *(Matter of Sunshine,* 51 AD2d 326, 327, *affd* 40 NY2d 875; *Matter of Phillips,* 293 NY 483, 490-491; *Matter of Liberman,* 4 AD2d 512, 516-517, *affd* 5 NY2d 719, 721). A party seeking to invalidate such an agreement has the burden of coming forward with evidence showing fraud, "[b]ut, in the absence of proof of facts from which concealment or imposition may reasonably be inferred, fraud will not be presumed. * * * Such a presumption must have as its basis evidence of overreaching—the concealment of facts, misrepresentation or some form of deception." *(Matter of Phillips, supra,* at 491.)

While the bona fides of John's claimed total loss of recollection may be open to question, such doubts are really beside the point. What is on point is that he identifies no circumstances whatsoever that would indicate concealment; on the contrary, he claims to remember nothing of the events pertaining to the execution of the Agreement. As for "overreaching", John argues that he alone gave up rights to his spouse's estate in return for which he received nothing, whereas she fully preserved her rights in his estate. That circumstance, standing alone, cannot support a triable issue in view of the " 'heavy presumption that a deliberately prepared and executed written instrument manifest[s] the true intention of the parties' *(Backer Mgt. Corp. v Acme Quilting Co.,* 46 NY2d 211, 219 * * *), and a correspondingly high order of evidence is required to overcome that presumption." *(Chimart Assocs. v Paul,* 66 NY2d 570, 574.) John furnishes no evidence at all with respect to the relative ages, financial resources, or prospects of either himself or his bride at the time the Agreement was executed and acknowledged, or at any time thereafter. Thus, his suggestion that overreaching may be found in this bargain rests on nothing but argument and speculation. On

this record, there is simply nothing for the trier of fact to consider by way of possible impeachment of the Agreement.

Accordingly, the order of the Surrogate's Court, Bronx County (Stanley Ostrau, S.), entered September 22, 1987, which denied respondent's motion for summary judgment, should be reversed, on the law, and the motion granted, without costs.

Asch, J. (dissenting). As the majority notes, a party seeking to invalidate an antenuptial agreement has the burden of coming forward with evidence demonstrating fraud. Such fraud will not be presumed "in the absence of proof of facts from which concealment or imposition may reasonably be inferred * * * [s]uch a presumption must have as its basis evidence of overreaching—the concealment of facts, misrepresentation or some form of deception" (Matter of Phillips, 293 NY 483, 491).

However, the Court of Appeals, in Phillips (supra), found that the Surrogate properly upheld an antenuptial agreement only after trial of the issues presented. The opinion there is replete with references to the "record". In this matter before us, on the other hand, we are considering a motion for summary judgment, where black letter law posits the court's function as issue finding rather than issue determination (Esteve v Abad, 271 App Div 725).

Here, the Surrogate justifiably decided that issues were raised on the basis of statements in petitioner's deposition that he never signed the agreement, did not understand its terms, had little literacy in English and did not recall any occurrence or discussion at any time in which he agreed to waive his right to share in his wife's estate. Although the majority finds petitioner's "posture of amnesia" insufficient to raise an issue of fact, it appears that the majority's characterization of petitioner's failure to remember events which took place 15 years before his wife's death is, in effect, a premature decision of an issue of fact.

The majority has decided that petitioner's claim of overreaching rests on nothing but argument and speculation. The fact remains that in the agreement petitioner waives all rights in decedent's estate while decedent specifically retains all her rights and claims in his estate. It is also undisputed that petitioner was not represented by counsel at the purported execution of the agreement. These circumstances, taken together with petitioner's lack of literacy in English and

the other factors pointed out by the Surrogate, certainly raise an issue as to whether fraud procured and permeated this agreement. This question can only be resolved after a plenary hearing *(see, Matter of Van Zandt,* 117 AD2d 810, 812, and the cases cited therein). Accordingly, I would affirm the order of the Surrogate's Court.

CARRO, J. P., and MILONAS, J., concur with WALLACH, J.; ASCH, J., dissents in an opinion.

Order, Surrogate's Court, Bronx County, entered on September 22, 1987, reversed, on the law, and the respondent-appellant's motion for summary judgment granted, without costs and without disbursements.