PAMELA F. ELGAR *v.* ERIC M. ELGAR,
ADMINISTRATOR (ESTATE OF
GEORGE P. ELGAR)
(15272)

Peters, C. J., and Callahan, Berdon, Norcott and Katz, Js.

Argued March 27—officially released August 13, 1996

*Miles F. McDonald, Jr.,* with whom was *Donat C. Marchand,* for the appellant (plaintiff).

*A. Reynolds Gordon,* with whom was *Amy J. Greenberg,* for the appellee (defendant).

NORCOTT, J. The principal issue in this appeal is whether an antenuptial agreement between the plaintiff, Pamela F. Elgar, and her husband, George P. Elgar (decedent), which contains a New York choice of law provision, is valid and enforceable. The plaintiff appeals from a judgment of the trial court wherein the court concluded that the antenuptial agreement: (1) contained a valid choice of law provision specifying that the agreement was to be interpreted according to New York law; and (2) is valid and enforceable under New York law. We affirm the judgment of the trial court.

The relevant factual and procedural history is as follows. The plaintiff and the decedent were married in 1988. Prior to their marriage, they had executed an antenuptial agreement wherein each party had waived his or her rights to the other's property in the event of death or divorce.[1] In 1990, the decedent died intestate.

---

[1] The antenuptial agreement was executed in the presence of a witness and acknowledged before a notary public. It provides that each party can own, hold and freely dispose of all real and personal property owned at the time of the agreement or acquired thereafter by gift, free from all rights of the other; that each party can dispose of all real and personal property upon death by will, testamentary substitute, or any other arrangement as if the parties had never been married; that each party waived, released and renounced all interest in the other party's estate; and that neither party

There were no children of the marriage. The decedent was survived by two adult children from a prior marriage, Marie Elgar Hopper and Eric Elgar, the defendant in the present action. The Westport Probate Court appointed the defendant as the administrator of his father's estate. Subsequently the antenuptial agreement was admitted to and approved by the Probate Court,[2] and the plaintiff, pursuant to the agreement, was divested of her statutory share of the decedent's estate.[3] Thereafter, the plaintiff appealed the decree of the Probate Court to the Superior Court pursuant to General Statutes § 45a-186.[4]

The case was referred to an attorney trial referee[5] who conducted a trial de novo. The referee made the following findings of fact and recommended judgment for the defendant. The plaintiff and the decedent were married in Westport on September 25, 1988, after having

would contest the will of the other. Further, the agreement provides that the plaintiff waived the right to legal counsel and acknowledged that, in light of the voluntary and knowledgeable nature of the waiver, she would not claim that the agreement was void and unenforceable. Finally, the agreement provides that both parties acknowledge that the agreement was fair, equitable, and entered into voluntarily, not as a result of duress or undue influence.

[2] The Probate Court determined that the agreement was valid and enforceable and that, therefore, in accordance with General Statutes § 45a-436 (f), which provides that the statutory share of a spouse's estate may be waived by a written agreement, the plaintiff had no right to share in the decedent's estate.

[3] See General Statutes § 45a-437, which provides in relevant part: "Intestate succession. Distribution to spouse. (a) If there is no will, or if any part of the property, real or personal, legally or equitably owned by the decedent at the time of his or her death, is not effectively disposed of by the will or codicil of the decedent, the portion of the intestate estate of the decedent . . . which the surviving spouse shall take is . . .

"(4) If there are surviving issue of the decedent one or more of whom are not issue of the surviving spouse, one-half of the intestate estate absolutely."

[4] General Statutes § 45a-186 provides in relevant part: "Appeals from probate. Any person aggrieved by any order, denial or decree of a court of probate in any matter . . . may appeal therefrom to the superior court for the judicial district in which such court of probate is held . . . ."

[5] See General Statutes § 52-434.

lived together for the previous four years. Both were experienced business people. During the month of July prior to their marriage, the decedent had told the plaintiff that he would require her to sign an antenuptial agreement before they could be married, to which she had responded "[f]orget about it."

On the morning of September 22, 1988, after the wedding date had been set for September 25, the invitations had been sent, and the acceptances had been received, the decedent informed the plaintiff that she was to sign an antenuptial agreement on the following day at the New York office of his lawyer, Stephen J. Corriss.

On September 23, 1988, the plaintiff saw the antenuptial agreement for the first time. Due to her immediate impending marriage and other events in her life, it was a busy day for the plaintiff and she had a lot on her mind. When she arrived at Corriss' office, however, she had already determined that she was going to sign the agreement and that she did not intend to read it. She testified that she understood the agreement to apply only in the event of divorce and had not considered that it would apply in the event of the decedent's death. Moreover, she believed that her refusal to sign the agreement would put her impending marriage in jeopardy. Furthermore, she testified that she would have signed the agreement regardless of its provisions. The night before she signed the agreement, two of the plaintiff's friends had told her that they did not like the fact that she was signing an agreement that she had not read, but she, nonetheless, simply flipped through the agreement quickly, stared at the pages rather than reading them, and signed the agreement.

Corriss hastily reviewed the agreement with the parties before they signed it and pointed out that it referred to events that would occur in the event of divorce, provided for waivers of rights against one another's

estates, and contained a choice of law provision specifying that the agreement was being made pursuant to New York law and would be interpreted accordingly. Immediately before the agreement was signed, the parties wrote out financial disclosures, which were annexed to the agreement.

At the time the agreement was executed, the plaintiff was a lawful resident and domiciliary of New York and remained so following the marriage. Except for holidays, weekends, and summers in Westport, she resided in New York and educated her daughter from a previous marriage at a school in New York. The plaintiff had a New York driver's license and voted, filed tax returns and patronized a dentist in New York. She also owned a business in New York until 1990. Additionally, the plaintiff had bank accounts, credit cards and store charge cards, which she maintained at her New York address. Despite requests from the decedent, she did not wish to relocate herself and her daughter from New York to Connecticut.

The decedent considered himself to be a lawful resident and domiciliary of Connecticut, although he spent weekdays with the plaintiff in an apartment in New York and purchased an apartment in New York after their marriage in the name of a trust in order not to jeopardize his Connecticut residency for tax purposes. He also owned a business in New York and managed both his business and his personal affairs using a New York law firm.

All discussions between the decedent and his attorneys, and the limited discussions between the decedent and the plaintiff in connection with the antenuptial agreement, took place in New York. The antenuptial agreement was negotiated, discussed and executed in New York.

The trial referee found that in connection with the agreement, the plaintiff had not been represented by an attorney and that the opportunity provided to her to procure an attorney, one day during a busy time in her life, was not reasonable. The plaintiff saw the agreement for the first time in Corriss' office and, for all practical purposes, she did not read it. Although she had told Corriss that she had read it, despite having not done so, under the circumstances, Corriss knew that she was not represented by counsel and should have known that she had not carefully studied the agreement. Corriss knew that the manner in which the agreement was signed was not in conformity with the normal practices of his own office and, in fact, he had received a note from a colleague in which the colleague had stated that he was "distressed by the combination of no counsel and no financial disclosure."

The referee, however, further found that no false representations had been made to the plaintiff with regard to the contents of the agreement and that there was no proof of fraud, duress or undue influence in connection with its execution.[6] While the parties were neglectful in their rush to sign the agreement, the plaintiff had nevertheless wished to sign the agreement and to get on with her wedding and life regardless of what the agreement said. The plaintiff had told her friends that she had decided in advance to sign the agreement because it was what the decedent wanted, and she wanted to sign it to please him. In fact, the plaintiff produced no evidence that she would not have signed

---

[6] Simultaneously with the signing of the agreement, the plaintiff was presented with a letter that stated that on several occasions she had been told that she should retain independent counsel but had freely elected not to do so. The referee found that the contents of this letter were untrue and rejected the letter as an effective waiver of anything. The referee further concluded, however, that the letter did not rise to the level of fraud because it had induced nothing and had been neither believed nor relied upon by the parties.

the agreement if she had realized that it had included disposition of the parties' estates upon their deaths.

On the basis of his factual findings, the referee concluded that under §§ 187 and 201 of the Restatement (Second) of Conflict of Laws (1971),[7] the parties' express choice of New York law was valid and, furthermore, that under New York law, the agreement was enforceable because the plaintiff had not met her burden of proving that the agreement had been the product of fraud. See *In the Matter of Sunshine*, 51 App. Div. 2d 326, 327–28, 381 N.Y.S.2d 260, aff'd, 40 N.Y.2d 875, 357 N.E.2d 999, 389 N.Y.S.2d 344 (1976) (New York rule places no special burden on party seeking to sustain antenuptial agreement). The referee submitted his report to the trial court and the trial court, having determined that the referee's findings of fact were supported by the evidence and that the conclusions drawn therefrom were legally and logically correct, accepted the

---

[7] Section 187 of the Restatement (Second) of Conflict of Laws (1971), provides in relevant part: "Law of the State Chosen by the Parties . . .

"(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

"(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

"(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

Comment (b) to § 187 of the Restatement (Second) provides: "Impropriety or mistake. A choice-of-law provision, like any other contractual provision, will not be given effect if the consent of one of the parties to its inclusion in the contract was obtained by improper means, such as by misrepresentation, duress, or undue influence, or by mistake."

Section 201 of the Restatement (Second) of Conflict of Laws (1971), provides: "Misrepresentation, Duress, Undue Influence and Mistake

"The effect of misrepresentation, duress, undue influence and mistake upon a contract is determined by the law selected by application of the rules of §§ 187–188."

recommendation and rendered judgment in favor of the defendant. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The plaintiff makes the following claims on appeal: (1) the New York choice of law provision contained in the antenuptial agreement should not have been given effect because (a) it had been obtained by improper means and, alternatively, (b) to give effect to the provision would contravene a fundamental policy of the state that has a materially greater interest in the determination of the issue, namely, Connecticut; see 1 Restatement (Second), supra, § 187; (2) in the absence of an express choice of law by the parties, an application of the test set forth in the § 188 of the Restatement,[8] and the principles set forth in O'Connor v. O'Connor, 201 Conn. 632, 638, 519 A.2d 13 (1986), compels the conclusion that, because Connecticut has the most significant relationship to the parties and the antenuptial agreement, the agreement must be interpreted in accordance with Connecticut law, under which it is unenforceable; and (3) even if the New York choice of law provision is valid, the antenuptial agreement is

---

[8] Section 188 of 1 Restatement (Second) of Conflict of Laws (1971), provides in relevant part: "Law Governing in Absence of Effective Choice by the Parties . . . .

"(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a) the place of contracting,

"(b) the place of negotiation of the contract,

"(c) the place of performance,

"(d) the location of the subject matter of the contract, and

"(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

unenforceable under New York law. We are not persuaded that the referee's finding that the parties' choice of New York law was valid is not supported by the record.[9] Furthermore, we agree with the referee and the trial court that, under New York law, the agreement is enforceable and that, therefore, pursuant to the agreement, the plaintiff was not entitled to her statutory share of her husband's estate.

I

Before addressing the validity of the antenuptial agreement, we must first determine under the law of which state the agreement should be assessed. The plaintiff makes two arguments in support of her contention that the New York choice of law provision contained in the agreement was improperly determined to be valid. First, she argues that it is invalid because it was obtained by improper means. See 1 Restatement (Second), supra, § 187, comment (b); see footnote 7. Specifically, the plaintiff argues that she could not have knowingly and voluntarily elected the choice of law provision because she did not, pursuant to the standards governing Connecticut antenuptial agreements, knowingly and voluntarily enter into the agreement. Second, the plaintiff argues that even if she knowingly had agreed to the New York choice of law provision, an application of the parties' choice of New York law in the present case "would be contrary to a fundamental policy of [Connecticut] which has a materially greater interest than [New York] in the determination of the particular issue"; see 1 Restatement (Second), supra, § 187 (2) (b); and, therefore, may not be given effect. We disagree with both of the plaintiff's contentions.

---

[9] Because we conclude that the New York choice of law provision was valid, we need not reach the plaintiff's claims in connection with the validity of the antenuptial agreement under Connecticut law.

A

The plaintiff's first argument puts the cart before the horse. If the agreement itself must be valid under Connecticut law in order for the choice of New York law to be valid, any choice of law provision specifying that the agreement must be interpreted according to the law of another forum would be rendered meaningless. In evaluating a choice of law provision, we conclude, in accordance with comment (c) to § 201 of the Restatement, that "[t]he fact that a contract was entered into by reason of misrepresentation, undue influence or mistake does not necessarily mean that a choice-of-law provision contained therein will be denied effect. This will only be done if the misrepresentation, undue influence or mistake was responsible for the complainant's adherence to the provision (see § 187, Comment [b] and Illustrations 1 and 2). Otherwise, the choice-of-law provision will be given effect provided that it meets the requirements of § 187." See footnote 7. Our conclusion is consistent with our prior case law in which we have given effect to an express choice of law by the parties to a contract provided that it was made in good faith. *International Union* v. *General Electric Co.*, 148 Conn. 693, 699, 174 A.2d 298 (1961); *Pollack* v. *Danbury Mfg. Co.*, 103 Conn. 553, 557, 131 A. 426 (1925); see also *Economu* v. *Borg-Warner Corp.*, 652 F. Sup. 1242, 1248 (D. Conn. 1987).

In the present case, the referee found that there was no evidence of misrepresentation, fraud or undue influence underlying the parties' choice of New York law. "A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443; *Rostenberg-Doern Co.* v. *Weiner*, 17 Conn. App. 294, 299, 552 A.2d

827 (1989). This court has articulated that attorney trial referees and factfinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court." (Citations omitted; internal quotation marks omitted.) *Wilcox Trucking, Inc.* v. *Mansour Builders, Inc.*, 20 Conn. App. 420, 423–24, 567 A.2d 1250 (1989), cert. denied, 214 Conn. 804, 573 A.2d 318 (1990).

"The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . *Holy Trinity Church of God in Christ* v. *Aetna Casualty & Surety Co.*, 214 Conn. 216, 223, 571 A.2d 107 (1990). *Rosick* v. *Equipment Maintenance & Service, Inc.*, 33 Conn. App. 25, 40–41, 632 A.2d 1134 (1993). A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Farrell* v. *Farrell*, 36 Conn. App. 305, 309, 650 A.2d 608 (1994).

Our review of the record convinces us that the referee was not clearly erroneous in his finding that the choice of law provision had not been obtained by improper means. See *Campisano* v. *Nardi*, 212 Conn. 282, 285, 562 A.2d 1 (1989). The antenuptial agreement contains an explicit "Governing Law" provision that states that "[a]ll matters affecting the interpretation of this Agreement and the rights of the parties shall be governed by the law of the State of New York." Both parties were experienced business people. The referee found that Corriss had reviewed the agreement with the plaintiff briefly before she signed it and had explained that the agreement was created pursuant to New York law

and would be interpreted accordingly. Finally, the referee found that the plaintiff had been prepared to sign the agreement regardless of what it said. Such findings adequately support the referee's conclusion that the choice of law provision had not been obtained by fraud or undue influence.

## B

The plaintiff's second argument in connection with the choice of law provision is based on § 187 of the Restatement. The plaintiff contends that an application of New York law in the present case would be contrary to a fundamental policy of Connecticut concerning the validity of antenuptial agreements and, therefore, may not be given effect. We are not persuaded.

We conclude, in accordance with § 187 of the Restatement, that parties to a contract generally are allowed to select the law that will govern their contract, unless either: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."[10] Applying this test to the facts of the pres-

---

[10] Many other jurisdictions have adopted § 187 of the Restatement. See, e.g., *Moore* v. *Subaru of America*, 891 F.2d 1445, 1449 (10th Cir. 1989); *Uniwest Mortgage Co.* v. *Dadecor Condominiums, Inc.*, 877 F.2d 431, 435–36 (5th Cir. 1989); *Tele-Save Merchandising Co.* v. *Consumers Distributing Co., Ltd.*, 814 F.2d 1120, 1122–25 (6th Cir. 1987); *Woodling* v. *Garrett Corp.*, 813 F.2d 543, 551 (2d Cir. 1987); *Shipley Co.* v. *Clark*, 728 F. Sup. 818, 825 (D. Mass. 1990); *Economu* v. *Borg-Warner Corp.*, supra, 652 F. Sup. 1248; *Cherry, Bekaert & Holland* v. *Brown*, 582 So. 2d 502, 507 (Ala. 1991); *In re Estate of Levine*, 145 Ariz. 185, 189, 700 P.2d 883 (App. 1985); *Sekeres* v. *Arbaugh*, 31 Ohio St. 3d 24, 25, 508 N.E.2d 941 (1987).

Such a rule is supported by the rationale set forth in comment (e) to

ent case, we conclude that the parties' choice of New York law was valid and, therefore, was properly given effect.

The first requirement that must be met in order to satisfy § 187 of the Restatement is that the state whose law is selected must have a substantial relationship to the parties or the transaction, or that there be some reasonable basis for the parties' choice. On the basis of the referee's factual findings, the trial court concluded that New York has a substantial relationship to the parties. We agree with the trial court. The plaintiff was at all times a New York resident and conducted many of her affairs in New York. The decedent spent weekdays in New York and maintained a business in New York. Furthermore, the agreement was executed at the decedent's attorney's office, which is located in New York.

The second requirement is that the application of the law of the chosen state must not violate a fundamental policy of the state that (1) has a greater material interest in the determination of the issue, and (2) is the state whose law would be applied in the absence of a choice by the parties. Thus, we need consider the relative policy interests only if Connecticut has a materially greater interest than New York in deciding the validity of the antenuptial agreement.

In light of the referee's findings, the trial court determined that Connecticut did not have a materially greater

§ 187 of the Restatement, which provides: "Prime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract. These objectives may best be attained in multistate transactions by letting the parties choose the law to govern the validity of the contract and the rights created thereby. In this way, certainty and predictability of result are most likely to be secured. Giving parties this power of choice is also consistent with the fact that, in contrast to other areas of the law, persons are free within broad limits to determine the nature of their contractual obligations."

interest than New York, so as to trigger an inquiry into the relative policy interests. We agree. Although there were significant contacts with Connecticut, including the facts that the marriage took place in Connecticut, that the decedent was a Connecticut resident, and that his estate is in probate in Connecticut, these contacts are not "materially greater" than the contacts with New York. In view of the numerous contacts, as set forth earlier in this opinion, between the parties, the agreement and the state of New York, we conclude that Connecticut does not have a materially greater interest in the enforceability of the agreement than New York. Accordingly, we conclude that the trial court properly upheld the parties' choice of New York law.

## II

Having determined that the agreement must be interpreted in accordance with the law of New York, we now turn to the plaintiff's claim that even if we were to assume that New York law applies, the trial court improperly concluded that the agreement was valid. Specifically, the plaintiff contends that New York recognizes that the parties to an antenuptial agreement stand in a confidential relationship to each other and that, therefore, once some evidence indicating unfairness has been introduced, the burden of proving the validity of the agreement shifts to the party seeking its enforcement, who must show that it was entered into knowingly and in good faith. We disagree.

The law in New York with regard to the enforcement of antenuptial agreements is clear. "Under prevailing law and public policy, a duly executed antenuptial agreement is given the same presumption of legality as any other contract, commercial or otherwise. It is presumed to be valid in the absence of fraud . . . . A party seeking to attack the validity of the agreement has the burden of coming forward with the evidence

showing fraud . . . . Where an antenuptial agreement becomes the subject of litigation the courts will exercise rigid scrutiny in exploring the circumstances within which such agreement was made . . . [b]ut, in the absence of proof of facts from which concealment or imposition may reasonably be inferred, fraud will not be presumed. . . . Such a presumption must have as its basis evidence of overreaching—the concealment of facts, misrepresentation or some other form of deception." (Citations omitted; internal quotation marks omitted.) *In the Matter of Sunshine*, supra, 51 App. Div. 2d 327–28.

The referee found that there was nothing in the record "to supply any evidence of coercion or undue influence by either [the decedent] or his attorney," and that the plaintiff had not established fraud or overreaching. These findings are supported by the record and are not, therefore, clearly erroneous. The parties were both experienced business people; Corriss informed the plaintiff of the scope of the agreement; the agreement incorporated full financial disclosure by the parties; and the plaintiff had decided prior to the meeting that she would sign the agreement regardless of what it said. Thus, because there was no evidence of fraud or over-reaching, we agree with the trial court that the agreement is enforceable as a valid contract under New York law.

The plaintiff relies on two cases, both of which were decided in New York prior to 1900; *Graham* v. *Graham*, 143 N.Y. 573, 38 N.E. 722 (1894); *Pierce* v. *Pierce*, 71 N.Y. 154 (1877); in support of her argument that a confidential relationship exists between the parties to an antenuptial agreement, which shifts the burden of proving its validity to the party seeking its enforcement. As the referee concluded, however, these cases are no longer the current law of the state of New York.

The Appellate Division of the Supreme Court of New York addressed an argument similar to that raised by the plaintiff in the present case with regard to the burden of proving the validity of an antenuptial agreement. See *In the Matter of Liberman*, 4 App. Div. 2d 512, 516–17, 167 N.Y.S.2d 158 (1957), aff'd, 5 N.Y.2d 719, 152 N.E.2d 665, 177 N.Y.S.2d 707 (1958). In that case, the court stated: "In the absence of proof by petitioner that she was induced to execute the waiver because of fraud or overreaching on the part of the decedent, the waiver must be held valid (*Matter of Phillips*, 293 N.Y. 483 [58 N.E.2d 504 (1944)]) . . . . Petitioner relies on *Pierce v. Pierce*, [supra, 71 N.Y. 154] but in that case there was conclusive proof of fraud and deception on the part of the decedent which had·induced the wife to enter into the prenuptial agreement. It should be noted that at the time the *Pierce* case was decided (1877), antenuptial agreements were presumed to be invalid unless proven otherwise. Now, however, in view of the expression of public policy by the Legislature in amending section 18 of the Decedent Estate Law . . . that presumption no longer exists and a prenuptial agreement is presumed to be valid in the absence of proof of fraud, concealment or imposition . . . ." (Citations omitted; internal quotation marks omitted.) *In the Matter of Liberman*, supra, 516–17. It is clear that the present state of the law in New York is reflected in *In the Matter of Sunshine*, and that, therefore, the trial court's determination that the antenuptial agreement was valid was proper.

The judgment is affirmed.

In this opinion the other justices concurred.