[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves the removal of an old heating oil tank at 17 Orange Street in Norwalk, the installation of a new tank, and the removal of contaminated soil. The plaintiff, Lametta Construction, Inc., the excavating subcontractor, brought this action against two defendants, the general contractors, Parks Energy Systems (Parks Energy), a corporation, and Raymond Emond, the owner of the premises. In its revised complaint, dated November 27, 1995, the plaintiff alleges that it has not been paid for services it rendered and materials it furnished to the defendant Emond at the subject premises. The plaintiff also alleges that it entered into a contract with Parks Energy pursuant to which it provided services and material to Parks Energy, for which it has not been paid.
Both defendants filed answers denying the material allegations of the complaint, and defendant Parks Energy filed a special defense, alleging that the plaintiff had agreed to seek payment for its excavating services only from Emond. The defendant Emond filed a counterclaim against the plaintiff in which he alleges that the plaintiff removed excessive dirt and backfilled with contaminated soil. This defendant claims that he was forced to expend money to repair and correct the work performed by the plaintiff and that the plaintiff's conduct violated General Statutes § 42-110a, the Connecticut Unfair Trade Practices Act (CUTPA). Defendant Emond also filed a cross complaint in two counts against his co-defendant, Parks Energy. In his first count, Emond alleges that he contracted with Parks Energy to remove the old underground fuel tank, that Parks Energy employed the plaintiff as its agent to do the excavating work, that the plaintiff removed excess dirt and put in contaminated soil while backfilling, all in violation of CUTPA. In the second count, Emond claims that, while working at Emond's home, the plaintiff was the agent of Parks Energy and that Parks Energy is liable for the plaintiff's negligence. Parks Energy filed a special defense to the cross complaint alleging that Emond's action violated the statute of limitations in General Statutes § 52-584.
This case was referred to Attorney Alfred H. Hoddinot, Jr., an attorney trial referee, in accordance with General Statutes § 52-434 (a) and Practice Book § 428 et seq. The referee conducted a trial and then submitted a report finding the following facts: (1) Emond hired Parks Energy as its contractor for the project; (2) Parks Energy, as general contractor, hired CT Page 7108 the plaintiff to complete the excavation work because the plaintiff had a larger excavating machine; (3) by removing approximately 200 yards of soil, the plaintiff removed an excessive amount of soil, and Parks Energy was negligent in its supervision of the plaintiff; (4) the backfill that the plaintiff used at the subject premises contained some contaminated soil, but there was no evidence that the plaintiff was aware of this fact; (6) the plaintiff billed Emond $11,220 for its work, which Emond refused to pay because he had hired Parks Energy, who in turn had contracted with the plaintiff as its subcontractor; (7) Emond incurred expenses of $5,861 to remove contaminated soil and to install a new driveway at his home; (8) the plaintiff should have removed only fifty square yards of soil in order to properly perform its excavating services, the reasonable value of which, to the owner of the subject premises, was $2,805; and (9) Emond paid the general contractor, Parks Energy, the sum of $2,067 for its services.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) neither the plaintiff nor Parks Energy was an agent of Emond, but were a subcontractor and a general contractor, respectively; (2) Emond had no direct contractual relationship with the plaintiff, and hence the plaintiff had no right to recover from him on a contractual basis; (3) the plaintiff does have valid claims on the basis of unjust enrichment against Emond, and breach of contract against the general contractor, Parks Energy; (4) the plaintiff and Parks Energy were both negligent in the excavation of the oil tank and in the backfilling, and hence are jointly and severally liable to Emond for his damages; (5) CUTPA was not violated by the negligence of the plaintiff and Parks Energy because there were no unfair methods of competition or deceptive acts or practices. The referee recommended that judgment enter in favor of Emond for $5,861, to recover his expenses relating to the contaminated soil and the new driveway, less a set-off in favor of the plaintiff, representing the reasonable value of services performed by the plaintiff for the benefit of Emond in the amount of $2,805, for a net recovery of $3,056 against both the plaintiff and Parks Energy, jointly and severally.
Neither the plaintiff nor Parks Energy challenged the referee's report, but, as authorized by Practice Book § 438, the defendant Emond moved to correct the referee's report to add that: (1) the plaintiff knew the soil used to backfill was contaminated and it intentionally used such soil at the subject CT Page 7109 premises; and (2) Emond needed to remove a tree and install a new lawn and walkway because of the plaintiff's negligence, costing Emond an additional $7,139, and hence he was seeking a total of $13,000.
The attorney trial referee declined to change his report or recommendation that the plaintiff recover $3,056, because he stated that Emond had not proved the allegation of his counterclaim that the plaintiff knew that the soil used at the subject premises for backfilling was contaminated. The referee also reiterated that installation of a new lawn and walkway and the removal of a tree were not attributable to the plaintiff's negligence.
The defendant Emond did not thereafter file exceptions to the referee's report as authorized by Practice Book § 439, but did file objections to the report pursuant to Practice Book § 440. These objections repeat his contention that the plaintiff is not entitled to a set-off in order to be compensated for the reasonable value of his work at the subject premises on the theory of unjust enrichment, and that he would not have needed a new lawn and walkway or the removal of a tree but for the negligence of the plaintiff.
As to this court's scope of review of an attorney trial referee's report regarding the facts of a given case, the Supreme Court recently reiterated in Elgar v. Elgar, 238 Conn. 839,848-49, 679 A.2d 937 (1996), that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443. . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous . . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) See also Romano v. Derby, 42 Conn. App. 624, 626,681 A.2d 387 (1996) ("[t]he trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee."). CT Page 7110
Thus, according to Elgar v. Elgar, supra, 238 Conn. 845, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence." Id. The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Id. As stated inRomano v. Derby, supra, 42 Conn. App. 628, "[a]fter reviewing the transcript and testimony of the hearing, the trial court concluded that a sufficient basis existed in the evidence to support the attorney trial referee's findings and therefore concluded that judgment should be rendered for the defendant. We will not overturn these conclusions unless they are legally or logically inconsistent with the facts found."
Because the defendant Emond did not file-exceptions, the referee's factual findings must stand unchallenged. "[F]iling exceptions seeking corrections by the court preserves the excepting party's rights in this regard . . . . A party's failure to conform to this procedure limits the reviewing court to determining whether the subordinate facts found by the attorney referee were sufficient to support the referee's ultimate factual conclusions." Blessings Corporation v. Carolton Chronic Convalescent Hospital, Inc., 7 Conn. App. 364, 367, 508 A.2d 829
(1986).
Moreover, as to the filing of objections by Emond, "[s]ection 440 . . . cannot be used to attack findings of fact." IroquoisGas Transmission System v. Mileski, 43 Conn. App. 47, 52,682 A.2d 140 (1996). "Absent . . . [an] exception to the report, the trial court, in ruling on the objection, [is] limited to determining whether the subordinate facts were sufficient to support the ultimate factual conclusions." (Internal quotation marks omitted.) Id., 51.
Thus, the referee's factual findings that the plaintiff did not realize the backfill he used at the subject premises was contaminated to some extent, and that only a new driveway is attributable to the plaintiff's negligence cannot be upset by this court. "In making this explicit factual determination, the attorney trial referee implicitly found certain witnesses to be credible and believable in their testimony. This was precisely his function as a fact finder. The resolution of conflicting factual claims falls within the province of the trial court. . . . Additionally, [w]e cannot retry the facts or pass on CT Page 7111 the credibility of . . . witness[es]." (Internal citations omitted; internal quotation marks omitted.) Crepeau v. Gronager,41 Conn. App. 302, 310, A.2d (1996).
Therefore, the only issue is this case is whether the plaintiff is entitled to a set-off because the plaintiff appropriately removed fifty square yards of top soil, which was worth $2,805 to Emond. If there were no set-off, according to the referee, Emond would be unjustly enriched by the plaintiff's excavation of the first fifty square yards of soil. This recommendation involves the issue of whether a subcontractor who has no privity of contract with a homeowner can recover from the homeowner on the basis of unjust enrichment for the value of his services.
"The equitable remedy of unjust enrichment may be invoked when justice requires that a party be compensated for property or services rendered under a contract, and no [legal] remedy is available by an action on the contract. . . . As an equitable right, unjust enrichment is based on the principle that in a given situation it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expenses of the plaintiff. . . . All the facts of each case must be examined to determine whether the circumstances render it just or unjust, equitable or inequitable, conscionable or unconscionable to apply the doctrine. . . . To recover under unjust enrichment, the plaintiff must demonstrate: (1) that the defendant has benefit ed from the transaction or has received something of value; and (2) that the benefit was unjust, that is, was not paid for by the defendant, to the detriment of the plaintiff." (Citations omitted; internal quotation marks omitted.) Garwood Sons Construction Company, Inc. v. Centos,8 Conn. App. 185, 187, 511 A.2d 377 (1986).
The propriety of a subcontractor recovering from an owner on the theory of unjust enrichment was recognized in Garwood SonsConstruction Company, Inc. v. Centos, supra, 8 Conn. App. 188. However, the extent of the recovery on that theory is subject to a credit for amounts the owner has paid to the general contractor. "Yet, if Centos (the owner) paid its [general] contractor, Rock, for these services, then the enrichment, in the absence of fraud, was not unjust." Id. The attorney trial referee found that Emond had paid his general contractor $2,067, and it follows that he is entitled to a credit of that amount against the set-off due the plaintiff as subcontractor. Thus, the $2,805 CT Page 7112 to which the plaintiff is entitled as a set-off is subject to a credit for Emond of $2,067, and the set-off due the plaintiff is accordingly reduced to $738, for a total recovery for Emond of $5,861, less $738, or $5,123.
Because this court may not retry the case, find additional facts or reject facts found by the referee, this court is not authorized to disturb the referee's findings that Emond should recover for his damages, and that the award is subject to a set-off to prevent unjust enrichment to Emond. Therefore, judgment is entered in favor of Emond on his counterclaim to recover $5,123 against the plaintiff and Parks Energy, jointly and severally.
Costs shall be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 27th day of December, 1996.
William B. Lewis, Judge