[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 3845
This case involves the foreclosure of a mechanic's lien and presents the issue of whether an alleged accord and satisfaction occurred. The plaintiff, Grasso Paving, Inc., is an excavating and paving contractor. In its complaint, the plaintiff alleges that it had a contract with the named defendant, Ascot Development Corp. (Ascot), the general contractor, to provide services and material to premises on Sunset Road, Stamford, owned by the co-defendants, Leandro Rizzuto, Jr., the principal officer of Ascot, and his wife, Denise Ann Rizzuto. The plaintiff also alleges that it began work on March 29, 1995, finished on April 7, 1995, and recorded a certificate of mechanic's lien on the Stamford land records on June 22, 1995, in the amount of $5,117.96. The plaintiff seeks a foreclosure of its mechanic's lien[1] and related relief. The defendants filed an answer denying the material allegations of the complaint and three special defenses: (1) that the plaintiff was paid in full; (2) that the amount owed the plaintiff was in dispute, and on June 8, 1995, the defendants sent a check to the plaintiff for $5,000, which was accepted by the plaintiff in full settlement of the amount due the plaintiff, viz., an accord and satisfaction; and (3) that they did not owe any money to the plaintiff.
This case was referred to Attorney Jules Lang, an attorney trial referee, in accordance with General Statutes § 52-434
(a) and Practice Book § 428 et seq. The referee conducted a trial and then submitted a report finding the following facts: (1) the plaintiff and the defendants signed an agreement dated March 24, 1995, for excavating and drainage work, to be billed on a cost plus basis, but with a maximum of $5,000; (2) the plaintiff claimed that the scope of the work had been increased at the request of the defendants, and sent a final bill to the defendants, dated April 20, 1995, in the amount of $14,209, which invoice also referred to an additional amount to be charged for paving a certain apron on the roadway; (3) the defendants sent a check for $5,000 on April 20, 1995, and a second check on June 8, 1995, for an additional $5,000, for a total of $10,000 received by the plaintiff; (4) the second check for $5,000 was accompanied by a letter from the defendants indicating that the amount sent represented payment in full[2]; (5) thereafter the plaintiff completed the paving, and on June 7, 1995, sent the defendants a separate bill for $908.86; (6) the plaintiff endorsed, deposited and cashed the check for $5,000 sent by the defendants on June 8, CT Page 3846 1995; and (7) when accepting the check, the plaintiff's lawyer wrote on June 12, 1995, that the defendants still owed his client the balance due on the original invoice of $14,209, as well as for the paving.[3]
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) by cashing the defendants' June 8, 1995 check for $5,000, the plaintiff entered into a binding accord based on mutual assent; (2) the plaintiff had not complied with the accord because it attempted to charge the defendants for the paving of the apron by charging an extra $908; (3) even if an accord and satisfaction had not been reached, because of a lack of a meeting of the minds, the plaintiff would still not be entitled to recover any money because the original written contract with a cap of $5,000 would still be operative, and the plaintiff would have been paid in full; and (4) both parties breached the accord because the plaintiff attempted to charge for the paving, and the defendants did not pay the balance of $760 that they owed to the plaintiff. The referee recommended that judgment enter in favor of the defendants, discharging the lien filed by the plaintiff.
The plaintiff, pursuant to Practice Book § 438, moved to correct the referee's report. The plaintiff sought the addition of the following corrections to the report: (1) the parties had mutually agreed upon a new contract price calling for an additional payment of $5,760, and the plaintiff was therefore owed $760, because the defendants only sent a partial payment of $5,000 to the plaintiff on June 8, 1995; (2) the June 8, 1995 check did not bear any endorsement that it constituted payment in full; and (3) there was no meeting of the minds and, therefore, no accord and satisfaction, because the plaintiff did not accept the $5,000 check of June 8, 1995, with the understanding that it constituted a valid accord.
In response to the motion to correct filed by the plaintiff, the attorney trial referee declined to change his recommendation. The referee noted specifically that: (1) by cashing the check for $5,000 sent on June 8, 1995, the plaintiff entered into a valid and binding accord and satisfaction based on mutual assent; (2) the plaintiff breached the accord by attempting to collect separately for the paving, when that work had been included in the check sent to the plaintiff by the defendants, but also that the defendants breached the accord by not paying the balance of $760; and (3) alternatively, there was no meeting of the minds CT Page 3847 and therefore the original agreement and contract cap of $5,000 were operative.
The plaintiff did not file any exceptions to the report as authorized by Practice Book § 439. The plaintiff did, however, file objections to the report pursuant to Practice Book § 440. In these objections, the plaintiff contends that: (1) there was no accord and satisfaction because there was no meeting of the minds; and (2) even if there had been an accord and satisfaction, it was for $5,760, not $5,000, and therefore the defendants owe the plaintiff $760.
As to this court's scope of review of an attorney trial referee's report regarding the facts of a given case, the Supreme Court reiterated in Elgar v. Elgar, 238 Conn. 839, 848-49,679 A.2d 937 (1996), that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 . . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous . . . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) See also Romano v. Derby, 42 Conn. App. 624, 626,681 A.2d 387 (1996) ("The trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee.")
Thus, according to Elgar v. Elgar, supra, 238 Conn. 845, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence." Id. The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Id. As stated inRomano v. Derby, supra, 42 Conn. App. 628, "[a]fter reviewing the transcript and testimony of the hearing, the trial court concluded that a sufficient basis existed in the evidence to support the attorney trial referee's findings and therefore concluded that judgment should be rendered for the defendant." CT Page 3848
Because the plaintiff did not file exceptions to the report, the referee's factual findings must stand uncorrected. "[F]iling exceptions seeking corrections by the court preserves the excepting party's rights in this regard . . . . A party's failure to conform to this procedure limits the reviewing court to determining whether the subordinate facts found by the attorney referee were sufficient to support the referee's ultimate factual conclusions." Blessings Corporation v. Carolton Chronic Convalescent Hospital, Inc., 7 Conn. App. 364, 367, 508 A.2d 829
(1986); Practice Book § 439.
Moreover, as to the filing of objections by the plaintiff, "[s]ection 440 . . . cannot be used to attack findings of fact."Iroquois Gas Transmission System v. Mileski, 43 Conn. App. 47,52, 682 A.2d 140 (1996). "Absent . . . [an] exception to the report, the trial court, in ruling on the objection, [is] limited to determining whether the subordinate facts were sufficient to support the ultimate factual conclusions." (Internal quotation marks omitted.) Id., 51.
Therefore, the issue in this case is whether the subordinate facts found by the referee "were sufficient to support the ultimate factual conclusions." Iroquois Gas Transmission Systemv. Mileski, supra, 43 Conn. App. 51. The subordinate facts found by the referee essentially were that the amount due the plaintiff was disputed, the defendants sent $5,000 in payment of the plaintiff's invoice, and the plaintiff negotiated the check and accepted it as payment in full. At this point it should be noted that in connection with determining whether the referee's conclusion are legally and logically correct, the reviewing court has a further role in attorney trial referee cases. Although the factual findings of the referee may not be disturbed, the referee's conclusions of law are not binding on this court. "[A] referee's determinations of law in his or her report are not binding on the court . . . . The trial court has the power to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee." (Citations omitted; internal quotation marks omitted.) Dills v.Enfield, 210 Conn. 705, 713, 557 A.2d 517 (1989). See also StateBank of Westchester v. New Dimension Homes of Connecticut. Inc.,38 Conn. App. 491, 497, 661 A.2d 119 (1995) (stating "[A]ny legal conclusions reached by an attorney trial referee have no conclusive effect"). CT Page 3849
In analyzing whether the conclusion of the referee that an accord and satisfaction occurred, a starting point is the definition contained in a case that appears to be very similar to the present case. "When there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the debtor and the creditor to negotiate a contract to settle the outstanding claim . . . . An accord is a contract between creditor and debtor for the settlement of a claim by some performance other than that which is due. Satisfaction takes place when the accord is executed . . . . Without a mutual assent, or a meeting of the minds, there cannot be a valid accord." (Citations omitted; internal quotation marks omitted.) Herbert S. Newman Partners v. CFC Construction Ltd.Partnership, 236 Conn. 750, 764, 674 A.2d 1313 (1996).
The referee concluded that a valid accord had occurred because the plaintiff had cashed the second $5,000 check, but apparently attached little, if any, significance to the plaintiff's letter sent to the defendants just a few days after receiving the check that clearly demonstrates that there was no "mutual assent, or a meeting of the minds." Id. To the contrary, the plaintiff characterizes the defendants' letter, which could reasonably be construed as offering an accord, as "self-serving" and states that it "mis-characterizes" the effect of the $5,000 check sent on June 8, 1995, by the defendants. The plaintiff through counsel explicitly advised the defendants that there was still $5,117 due and owing, despite the receipt of the check for $5,000. In Herbert S. Newman Partners v. CFC Construction Ltd.Partnership, supra, 236 Conn. 764, former Chief Justice Peters writes that "the parties had disputed the terms of the settlement agreement." Because there was such a disagreement, the finding that "there was no mutual assent between the parties, a necessary predicate for the existence of a valid accord," was accepted. Id., 764-65.[4]
As in the present case, the debtor claimed that the cashing of a check constituted the acceptance of the offer of an accord. "We disagree. If a creditor knowingly cashes or otherwise exercises full dominion over a check explicitly tendered in full satisfaction of an unliquidated debt, the creditor cannot disown any conditions upon which the check has been tendered . . . . see General Statutes § 42a-3-311. In this case, however, the $100,000 check was neither tendered in full satisfaction of the [debtor's] debt nor tendered on condition of the terms contained in the letter that accompanied the check . . . . [N]either the CT Page 3850 letter nor the check conditioned acceptance of the check on the terms contained in the letter." Herbert S. Newman Partners v.CFC Construction Ltd. Partnership, supra, 236 Conn. 765-66. In the present case, the accompanying letter only stated that it contained a check that was described as "more than generous." The check itself did not impose any conditions on its receipt and negotiation. Therefore, it follows that the parties did not have a meeting of the minds to the effect that the second check for $5,000 satisfied the debt due the plaintiff, nor did the cashing of the check result in the establishment of an accord.
Another conclusion that the referee drew from the facts was that if there had not been mutual assent to an accord, then the original contract with a cap of $5,000 was reinstated. The mutual assent, or lack of it, relates to the purported accord. If there is no accord, that means the plaintiff is still claiming that the defendants owe the amount in the invoice and not some lesser sum. As far as the original contract with the $5,000 cap, it is obvious that this contract was modified by the conduct of the parties because the defendants in fact paid a total of $10,000 to the plaintiff, well in excess of the supposed cap or ceiling of $5,000. "Modification of a contract may be inferred from the attendant circumstances and conduct of the parties." Herbert S.Newman Partners v. CFC Construction Ltd. Partnership, supra,236 Conn. 762.
Both in its motion to correct ("a balance of $760 remains due and owing the plaintiff"), and in its objection to judgment dated January 3, 1997 ("the attorney trial referee erred in not awarding an additional $760 . . .") the plaintiff indicates that it was owed $760, and not some larger sum as previously indicated in its mechanic lien, its complaint and in its letter of June 12, 1995, to the defendants. For this reason, judgment may enter fixing the debt in the amount of $760.
Therefore, judgment is entered in favor of the plaintiff on the complaint and the mechanic's lien is ordered foreclosed. This matter should now be claimed for the foreclosure short calendar in order to specify the type of sale, the date thereof, and all other pertinent matters. Costs shall be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 16th day of April, 1997. CT Page 3851
William B. Lewis, Judge