[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By way of background, the parties were married on September 22, 1993. There is one minor child, Michael Dattilo, born on November 12, 1989, about four years prior to the marriage, who is now seven years old.
The plaintiff (referred to hereafter as the husband) brought an action of dissolution in Connecticut, which is now pending in this court. In his complaint, the husband alleges the parties signed a prenuptial agreement in New York four days prior to the marriage which is binding on the parties in this dissolution action. The defendant (hereinafter referred to as the wife) alleges and urges the court to invalidate this agreement because the husband failed to disclose a list of his assets and CT Page 6316 liabilities as required by McHugh v. McHugh, 181 Conn. 482
(1980). She also raises the defenses of fraud and duress.
Both of the parties signed and acknowledged this agreement before their attorneys on September 8 and 9, 1993. It complied with the law of New York in that it was in writing, subscribed to by the parties and acknowledged in the same manner as required for a deed to be recorded. Section 236B(3) Domestic Relations Law. These three requirements are indispensable for a prenuptial agreement to be valid in New York. Matisoff v. Dobi, 1997 WL. 236065 (Court of Appeals). This court finds the prenuptial agreement to be in accordance with Section 236B(3) Domestic Relations Law of New York and is in compliance with the three requirements in Matisoff v. Dobi, supra.
A prenuptial agreement is subject to the defenses of fraud and duress like any other contract. Brassey v. Brassey,546 N.Y.S.2d 370 (1989). It has the same presumption of legality as any other contract. Goldfarb v. Goldfarb, 647 N.Y.2d 243 (Supreme Court, Appellate Div., September 9, 1996); Forsberg v. Forsberg,219 App.Div.2d 615, 631 N.Y.S.2d 709. The party seeking to invalidate a prenuptial agreement has the burden of proof as to the defenses of fraud and duress. Brussey v. Brussey, 546 N.Y.S.2d 370 (1989);Panossian v. Panossian, 569 N.Y.S.2d 1982 (1941).
The agreement in this case was comprehensive and consisted of forty pages. Each party waived and released to each other any interest in marital property acquired or owned prior to their marriage. The husband represented his property to have a fair market value of between $15 to $30 million, and the wife owned $30,000 in total assets. The parties agreed it would be governed by the laws of New York. The husband acknowledged his legal residence to be in Greenwich, Connecticut. The wife was and is currently a legal resident of New York and was employed as a hairdresser in New York when the agreement was signed.
The husband has many business interests, owning numerous gas stations in New York and New Jersey through a company known as Super Value, Inc., which has its principal office in New York. He has one principal asset in Westbrook, Connecticut known as Waters Edge, a waterfront resort.
The agreement was originally prepared by the husband's attorney, and the wife was represented by her own attorney. There was conflicting testimony on how long the wife had the agreement CT Page 6317 in order to review its terms. The court finds she had the draft agreement for about 30 days and through her attorney requested and made certain changes to it. These changes were negotiated by their respective attorneys. The court finds she had ample time to review and request changes to the original agreement. She signed it on September 8, 1993, in her attorney's office without the husband's presence, and the husband likewise signed it the next day, September 9, 1993, in the presence of his attorney without the wife's presence.
Section 236B(4) of the New York Domestic Relations Law further requires that the terms of a prenuptial agreement be fair and reasonable at the time it is signed and its terms are not unconscionable at the time of entry of final judgment.
There was no evidence presented at the hearing held May 15, 1997, of fraud or duress by the husband. He concedes that he would not marry the wife unless the agreement was signed before the marriage. It was undisputed that the parties lived together at the husband's home in Greenwich, Connecticut, for about four years, and their son Michael was born there.
The agreement provides generously for the minor child's support, post secondary education, medical insurance, and summer camp expenses, all to be paid by the husband. It also provided 24 months of alimony at $1,000 per month for the wife. This agreement, considering all its terms and the circumstances covered, complied with the statutory requirements of Sec. 236 (B)(4) in that it was fair and reasonable and was not unconscionable at the time of signing nor at the time judgment was entered. The wife did not sustain her burden of proof on the defense of duress or fraud.
The husband had been previously married and divorced, is now 56, and has children he wanted to provide for from his first marriage. The wife is now 35, had lived with him for four years prior to the marriage and knew or should have known he had substantial assets. These assets, which the husband represented were worth between $15 and $30 million, are about the same now as they were when the agreement was signed except he believes the value of Water's Edge is substantially less. The fact that the husband failed to provide a schedule of his assets would not invalidate the agreement under New York law. Eckstein v.Eckstein, 129 A.2d 552 (April 16, 1987). The wife's attorney at the time of the signing of the agreement could have requested CT Page 6318 more specific information regarding his assets if she felt they were necessary to know prior to signing the agreement.
The parties may choose the law which is to govern unless they have no substantial relationships to New York and the New York law is contrary to the fundamental policy and statutory requirements under Connecticut law. Section 187 of the Restatement (Second) of Conflict of Laws. Both parties have substantial personal and financial interests in New York, and they had the right to choose the substantive law of that state to apply to this agreement. The husband's principal business is in a company in which its assets are gas stations in New York and New Jersey worth between $15 to $30 million. His only asset in the state of Connecticut is a waterfront resort in Westbrook, Connecticut, where they would spend weekends there together for about four years prior to their marriage. The wife works in New York as a hairdresser as she did before the agreement was signed. She remains a legal resident of New York and continues to have business and personal relationships there. The parties had and continue to have a substantial relationship with the State of New York and applying its laws would not be contrary to any public policy or statute of Connecticut. See Section 187 Restatement (Second) Conflict of Laws; Elgar v. Elgar, 238 Conn. 839 (1996). The parties were free to choose the New York law to apply to this prenuptial agreement, land this court will enforce it according to its terms.
Even if it were assumed the parties agreed for Connecticut law to apply, this agreement would not have violated the public policy or the other statutory requirements of this state underMcHugh v. McHugh, 181 Conn. 482 (1980). The facts in this case are distinguishable from those found under McHugh, supra. There the court required full disclosure of the assets owned by the husband to uphold the prenuptial agreement. In this case, the wife had been living with the husband for four years and knew or should have known what they were and could have required the husband or her attorney to specifically list them in this agreement. The agreement covers the Connecticut statutory requirements as to child support and alimony. The parties were represented by separate counsel and the terms were negotiated in good faith by the parties; therefore, this prenuptial agreement would also be valid in this state. Levin v. Levin, 194 Conn. Sup. 2020 (February 25, 1994).
PETRONI, J. CT Page 6319