[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Fleet Bank, NA (Fleet), seeks to foreclose two CT Page 9280 mortgages on real property located primarily in Greenwich and partly in Stamford. Fleet is the current holder of the promissory note and guaranty in issue. Fleet obtained these documents when it acquired the named plaintiff, National Westminster Bank, USA (NatWest), on May 1, 1996. Peter J. Gould, individually, of Greenwich, and Peter J. Gould d/b/a Cherry Hill Development Company (Cherry Hill), a sole proprietorship, are referred to hereafter as the defendants.
The plaintiff filed a two-count amended complaint dated March 31, 1997. The plaintiff alleges in the first count of its complaint that the defendants executed a note on December 18, 1986, payable to NatWest, in the original principal amount of $2,200,000. The plaintiff further alleges that this note was secured by a mortgage on the defendant Gould's property. This property is approximately 40 acres and is located at 429 Taconic Road, Greenwich. The plaintiff also claims that on July 6, 1993, NatWest and the defendants entered into a writing modifying the note. The writing allegedly provides that the entire principal balance was to become due on December 1, 1994. It is further alleged that the note was not paid when due. The plaintiff, Fleet, has been properly substituted for NatWest.
The plaintiff claims in the second count of the complaint that Aldine Technologies, Inc. (Aldine), of Carlstadt, New Jersey, borrowed $1,292,000 from NatWest. The plaintiff also alleges that on March 31, 1993, the defendant Gould, the president of Aldine, signed a written guaranty of the repayment of this note. The plaintiff alleges that it was the holder of this guaranty, and that the underlying note was in default as of its due date of December 31, 1994. The guaranty was also secured by a mortgage on Gould's property on Taconic Road. The plaintiff seeks a foreclosure of its mortgage and related relief, including interest, late charges and an attorney's fee as provided in the note.
The defendants denied the allegations of the complaint and filed a counterclaim seeking $10,000,000 in damages. The defendants allege that in 1986, Gould and NatWest agreed that the note would be repaid from the proceeds of the sale of the Taconic Road property. The defendants also contend that the notes and mortgages were further modified between 1993 and 1995 and that the plaintiff has breached that agreement. The defendants further allege that Gould was an officer of Lensclean, Inc., and that the proceeds of the sale of Lensclean, Inc. to H. L. Bouton for CT Page 9281 $450,000 were assigned to NatWest, thus reducing the balance of the Aldine note. They also allege that Gould assigned to NatWest a note from Gould Paper Company for $850,000, which paid off the remainder of the Aldine note, but that NatWest, in its fiduciary capacity, had failed to pursue the collection of these two notes. Gould further alleges that NatWest by "fraudulently filing" this action has impaired his "credit and reputation" and the "credit and reputation" of Cherry Hill and has diminished Gould's capacity to operate "other businesses."
Pursuant to General Statutes § 52-434 (a) and Practice Book (1998 Rev.) § 19-2, the case was assigned to an attorney trial referee, Attorney Samuel V. Schoonmaker, III. The referee conducted a trial, and thereafter submitted a report finding the following facts: (1) the $2,200,000 note executed in 1986 by Gould and Cherry Hill in favor of NatWest was in default and the plaintiff was the holder thereof; (2) this note provided, among other things, for late charges and for costs of collection, including attorney's fees in the event of a default; (3) on March 31, 1993, the defendant Gould executed a guaranty of a note payable by Aldine to NatWest in the amount of $1,292,000; (4) the 1993 note and guaranty were due and payable on December 31, 1994, and were not paid when due; (5) $30,628.93 represented a reasonable attorney's fee, including disbursements, for the plaintiff; (6) the value of the Greenwich property was found to be $4,500,000 as of August 26, 1997; and (7) the defendants did not prove the allegations of their counterclaim.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the plaintiff had proved it was the holder of the 1986 promissory note and of the 1993 guaranty that had been executed by the defendant Gould; (2) both the note and guaranty were past due and in default; and (3) both instruments provide for attorney's fees and for costs of collection in the event of a default.
Thus, the attorney trial referee found for the plaintiff and recommended that the two mortgages on the defendant Gould's property be foreclosed. As of July 15, 1997, the debt on the 1986 note was determined to be $1,950,000 of principal and $480,417.74 of interest, totaling $2,430,417.74, with per diem interest from that date to the date of judgment at $460.41667. The referee found that the debt on the 1993 guaranty was $224,118.94 of principal and $215,693.15 of interest as of July 15, 1997, CT Page 9282 totaling $439,812.09, with per diem interest thereafter of $68.48079.
Pursuant to Practice Book (1998 Rev.) § 19-12, the defendants moved on September 9, 1997, to correct the referee's report as follows:[1] (1) NatWest had agreed to extend the due date of the Aldine note; (2) certain credits that NatWest had received on the Aldine note and on a note from Gould Paper Company to Aldine were not properly credited to the defendants; (3) NatWest and the defendants entered into a "Settlement Agreement" dated July 14, 1997, to extend payment of both the 1986 note and the 1993 Aldine note guaranteed by the defendants; and (4) the findings relating to the amount of the defendants' indebtedness to the plaintiff were erroneous and should be deleted. The referee declined to change his report and recommendations.
Pursuant to Practice Book (1998 Rev.) § 19-13, the defendants filed exceptions to the referee's report.[2] The defendants contend that: (1) the referee failed to find whether NatWest and the defendants entered into a Settlement Agreement dated July 14, 1997, to extend payment of the 1986 note and the 1993 Aldine note guaranteed by the defendants; and (2) whether there was a "verbal agreement" between NatWest and the defendants that related to the notes in issue.
The defendants also filed an objection to the acceptance of the referee's report pursuant to Practice Book (1998 Rev.) § 19-14.[3] The objections reiterate the arguments contained in the motion to correct and in the exceptions. Specifically, the defendants argue that the referee failed to allow Gould to testify that there was an agreement between NatWest and the defendants to extend payment of both notes in issue; and (2) certain exhibits were introduced into evidence without proper foundation.[4]
"A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . A finding of fact is clearly CT Page 9283 erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) Elgar v.Elgar, 238 Conn. 839, 848-49, 679 A.2d 937 (1996).
This court has two tasks to perform when reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence." Elgar v. Elgar, supra, 238 Conn. 845. The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Id.
The issue in this case involves whether the purported settlement agreement should have been admitted into evidence by the attorney trial referee. The referee's decision that the plaintiff was entitled to judgment was not effected by the purported settlement agreement. This court believes that the referee's decision regarding this agreement was correct for one or more of the following reasons.
First, the mortgage documents themselves indicate that: "This mortgage may be changed only if you and I both give our written consent." There is no such written consent.
Second, the alleged settlement agreement was not admitted or marked for identification at the trial of this case.[5] Rather it surfaced as part of the defendants' motion to correct ("said agreement was essentially that set forth in a Settlement Agreement dated July 14, 1997, a copy of which is attached to this Motion and made a part hereof").
Third, the purported settlement agreement is not signed by the plaintiff. The Statute of Frauds, General Statutes §52-550 (a), refers to the necessity of a writing signed "by the party . . . to be bound." This statute is applicable to "any special promise to answer for the debt . . . of another" and to loans exceeding $50,000.
Fourth, the alleged agreement is being offered apparently to vary the terms of the 1986 note and of the 1993 Aldine note guaranteed by the defendant Gould. The "Parol Evidence Rule" prohibits the use of evidence outside "the four corners of the contract" to vary or change the written terms of a contract. CT Page 9284Heyman Associates v. Insurance Company of Penn., 231 Conn. 756,779-81, 653 A.2d 122 (1995). "The rule does not forbid the presentation of parol evidence, but prohibits the use of such evidence to vary or contradict the terms of the contract." TIECommunications. Inc. v. Kopp, 218 Conn. 281, 288, 589 A.2d 329
(1991). There are several exceptions to the rule set forth inHeyman but none appear applicable to the present case where an unambiguous written note and guaranty are in issue. The loan documents refer to applying New York law but the defendants do not contend that New York law requires a different result.
Lastly, this purported agreement appears to be part of settlement negotiations between the plaintiff and the defendants. As indicated, the agreement was never executed because apparently the parties could not agree on the terms of any such settlement. As such, the agreement would not be admissible, even if it had been offered, because settlement negotiations are not admissible in evidence. Tuite v. Stop and Shop Companies Inc.,45 Conn. App. 305, 313, 696 A.2d 363 (1997).
Based on the above, it would not be proper for the court in this case to reject the referee's report regarding the liability of the defendants on the promissory note and on the guaranty. The referee's conclusion that the plaintiff is entitled to judgment is legally and logically consistent with the facts found by the referee. Romano v. Derby, 42 Conn. App. 624, 628, 681 A.2d 387
(1996). No material error in the referee's report has been found, and there is no other sufficient reason for rendering the report unacceptable. Practice Book (1998 Rev.) § 19-17 (a).
Hence, judgment is entered in favor of the plaintiff against the defendants on the 1986 note for $1,950,000 principal, with interest of $480,417.74, to July 15, 1997, for a total of $2,430,417.74, with per diem interest of $460.41667 from that date to the date of this judgment in the amount of $174,037.50, for a total on this note of $2,604,455.24.
As to the Aldine note and guaranty, judgment enters in favor of the plaintiff against the individual defendant Gould for $224,118.94 of principal, and $215,693.15 of interest as of July 15, 1997, for a total of $439,812.09, with per diem interest thereafter of $68.48079, in the amount to $25,885.73, for a total on the guaranteed note of $465,697.82.
The total amount owed the plaintiff on both notes, including CT Page 9285 the per diem on each, to the date of this judgment, is $3,070,153.06. In addition, an attorney's fee in the amount of $30,628.93 is awarded to the plaintiff, for a grand total due the plaintiff from the defendants of $3,100,781.99.[6]
Costs are to be taxed by the office of the chief clerk in accordance with General Statutes § 52-257 and Practice Book (1998 Rev.) § 18-5.
So Ordered.
Dated at Stamford, Connecticut, this 29th day of July, 1998.
William B. Lewis, Judge