[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, National Loan Investors Limited Partnership, filed a two count complaint dated August 10, 1995. The plaintiff is a limited partnership located in Oklahoma City. The plaintiff claims that it is the holder of a variable rate promissory note executed by the defendant, Heritage Square Associates (Heritage Square). The defendant is a partnership, with its principal place of business in Westport. The other defendants are the general partners of the defendant partnership, Joseph P. Wagenseller, Donald L. Blackwelder, and Anne M. Fox. The note was executed on October 28, 1987, in favor of Mechanics and Farmers Savings Bank (M F), in the amount of $500,000. The note was due on November 1, 1988.
The plaintiff alleges in the first count of its complaint that it purchased the note and guarantees from the Federal Deposit Insurance Corporation (FDIC) as receiver for M F. The plaintiff also alleges that the note was not paid when due. In the second count of the complaint, the plaintiff claims that on October 28, 1987, Joseph P. Wagenseller, Virginia F. Wagenseller and Anne M. Fox, signed written guarantees of the repayment of this note. The note was secured by a second mortgage on a shopping center at 1700 Post Road, Fairfield, which was divided into a number of condominium units which were to be sold separately. The first mortgagee foreclosed its mortgage and M F did not recover any money on its second mortgage. CT Page 1214
Heritage Square and the two Wagensellers,[1] referred to hereafter as the defendants, in their amended answer of August 21, 1996, admit that the promissory note and the guarantees were executed, but deny that they are liable to the plaintiff. The defendants also filed four special defenses. The first special defense states that the plaintiff is barred from collecting the note because of "laches." In the second special defense, the defendants contend that, despite requests by the defendants, the plaintiff failed to enter into "timely negotiations" to resolve the debt. In the third defense, the defendants claim that the plaintiff is barred from collecting on the note because the plaintiff violated its obligation of good faith by failing to enter into timely negotiations to resolve the debt as required by General Statutes § 32a-1-203. In the fourth special defense, the defendants claim the action is barred by the statute of limitations.
On October 8, 1996, the plaintiff filed an amended reply to the special defense of the statute of limitations. The plaintiff states that the defendants waived the statute by making part payments after the due date of the note.
Anne M. Fox denied that she was liable for repayment of the note. She also filed four special defenses. The first defense states that the plaintiff's action is barred by the statute of limitations. The second special defense invokes the doctrine of laches. The third defense contends that the plaintiff violated its obligation to act in good faith and fair dealing in failing to enter into timely negotiations to resolve the debt. Fox alleges in the fourth special defense that the plaintiff violated General Statutes § 42a-1-203 by failing to "enter into timely negotiations" despite requests to do so.
The defendant Fox also filed a cross-complaint against the defendants containing two counts. In the first count, Fox alleges that she withdrew from the partnership on June 19, 1990, at which time the defendant, Heritage Square Associates, agreed in writing to indemnify and hold her harmless from any claims or debt that the partnership had previously incurred or might incur in the future. The second count is directed against Joseph P. Wagenseller personally. Fox alleges that he was a partner of the partnership and is therefore "jointly and severally liable" with the partnership to indemnify and hold her harmless. CT Page 1215
In an amended answer to Fox's cross-complaint dated August 21, 1996, the defendants admitted the execution of the indemnity agreement, but filed a special defense contending that Fox breached her contract with the defendants by transferring her interest in the partnership to a third party without the consent of the defendants.
The case was referred to Attorney Richard A. Robinson, an attorney trial referee in accordance with General Statutes §52-434 (a) and Practice Book § 428 et seq., The referee conducted a trial, and thereafter submitted a report finding the following facts: (1) the partnership, Heritage Square, acting by its three partners, Joseph P. Wagenseller, Fox and Blackwelder, executed a $500,000 note in favor of M F on October 24, 1987, which, among other things, provided for attorney's fees in the event of a default; (2) the two Wagensellers and Fox personally guaranteed the repayment of this note; (3) the partnership was changed on February 1, 1987, to include Eagle Development Group, Inc. as a new partner; (4) no payments were made on account of this note prior to the due date, November 1, 1988; (5) the defendants made partial payments on four occasions, the last on September 4, 1990; (6) on June 15, 1990, the partnership signed a written document releasing and discharging Fox from all liabilities incurred by the partnership, including any notes, and agreeing to indemnify and hold her harmless from any claims against the partnership; (7) M F became insolvent on August 9, 1991 at which time the FDIC was appointed receiver; (8) the note was purchased by and was now held by the plaintiff; (9) the defendants made several offers to settle their liability for $7,500, at a time when the debt was approximately $120,000; (10) the offers were rejected by the plaintiff in June of 1995; (11) the plaintiff and/or the servicing agent for the FDIC sought meetings with the defendants to discuss their liability; (12) Gerry Brown and Allen Brown paid Fox $60,000 for a portion of any profits she made from the partnership; (13) the amended partnership agreement provided that a partner may not sell or assign any interest in the partnership without approval of the partnership; (14) Gerry L. Brown did not participate in the partnership; and (15) $11,775 represented a reasonable attorney's fee for the plaintiff's attorney.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the plaintiff had proved the execution of the promissory note for $500,000 and the guarantees by the Wagensellers and Fox; (2) Fox had proved that the CT Page 1216 defendants, Joseph P. Wagenseller and the partnership, had executed a valid and binding indemnity agreement in her favor; (3) the plaintiff's action was not barred by the statute of limitations because partial payments made by the defendants after the due date of the note on November 1, 1988 "tolled" the statute of limitations which began to "run again" only after the last part payment of September 4, 1990; (4) the plaintiff's action was not barred by laches as claimed by both the defendants and Fox in their special defenses because the plaintiff's delay in filing suit was reasonable in light of the partial payments made by the defendants; (5) the defendants did not demonstrate any prejudice by the delay; (6) the defendants failed to sustain their burden of proving lack of good faith because the correspondence indicates that the plaintiff did make attempts to negotiate repayment of the debt: (7) Fox's special defense claiming lack of good faith on the part of the plaintiff was not proved as she presented no, evidence of any attempt on her part to negotiate with the plaintiff; (8) the plaintiff had acted in good faith as required by General Statutes § 42a-1-203 ("every contract or duty within this title imposes an obligation of good faith in its performance or enforcement") by offering to settle the case for a reduced amount; and (9) Fox did not transfer her partnership interest but, on the contrary, agreed with the Browns to share her future profits from the partnership in consideration of $60,000.
Thus, the attorney trial referee found for the plaintiff and recommended that the plaintiff recover from the defendants and Fox $77,876 of principal, $48,405 of interest, and an attorney's fee of $11,775. These amounts were due as of October 2, 1997, and accrue additionally at $23.2549 per diem.
Pursuant to Practice Book § 438, the plaintiff moved to correct the referee's report. This motion cites 12 U.S.C. § 1821
(d) (14) of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA). This section extends the statute of limitations for six years after the FDIC is appointed as a receiver. In this case, the FDIC was appointed receiver on August 9, 1991. The referee agreed that the plaintiff stood "in the shoes" of the FDIC and thus found a second reason for his conclusion that the defendants had not sustained their burden of proof that the statute of limitations barred the plaintiff's claim.
The defendants moved to correct the referee's report as CT Page 1217 follows: (1) the plaintiff sued the Wagensellers solely in their capacity as guarantors of the note in issue; (2) all payments made to the plaintiff were made by an attorney for Blackwelder; (3) it took over seventeen months for the plaintiff to reply to the defendants' offer to settle the debt, which was made on January 18, 1994; (4) during that time the defendants' financial condition worsened; and (5) Fox sold one-half of her partnership interest to the Browns.
In response to the defendants' motion to correct, the referee: (1) declined to find that Joseph P. Wagenseller was sued only as a guarantor, but reiterated that this defendant was also sued under a breach of contract theory as a partner of Heritage Square Associates; (2) agreed that Virginia F. Wagenseller was sued only in her capacity as a guarantor; (3) agreed that the several partial payments to the plaintiff were made by an attorney for the partnership, but reiterated that such payments were made on behalf of the partnership; (4) declined to add anything to his report concerning the alleged deterioration of the Wagensellers' financial position for lack of proof thereof; and (5) reiterated his finding that Fox had not sold any of her partnership interest in Heritage Square Associates to the Browns.
The defendant Fox also moved to correct the report to reflect that: (1) she was sued solely in her capacity as a guarantor of the promissory note; (2) she did not take any part in making the several partial payments made by the defendants or in any negotiations concerning settlement of this case; and (3) prior to the due date of the note, she had been excluded from all partnership proceedings and affairs, and thus any tolling of the statute of limitations based on partial payments did not apply to her.
In response to the Fox motion to correct, the referee stated as follows: (1) Fox was not only sued in her capacity as guarantor but also under the plaintiff's breach of contract claim in its first count because she signed the note in her capacity as a partner; (2) he agreed that Fox had not personally taken part in any negotiations with the plaintiff or played any role in making the several partial payments to the plaintiff; and (3) the statute of limitations does not prevent the plaintiff from recovering from Fox under the breach of contract claim.
Pursuant to Practice Book § 439, the defendants filed one exception to the referee's report. The defendants reiterate their CT Page 1218 contention that there was no consideration for the indemnification agreement because Fox had sold one-half of her partnership agreement without the knowledge and consent of the other partners of the defendant partnership, Heritage Square Associates.
The defendants also filed objections to the acceptance of the referee's report pursuant to Practice Book § 440.[2] Their objections reiterate the argument contained in the exceptions, specifically that there was a lack of consideration for the indemnification agreement with Fox.
The defendant Anne M. Pox did not file exceptions or objections to the referee's report.
A trial court's scope of review of an attorney trial referee's report regarding the facts of a given case, is discussed in Elgar v. Elgar, 238 Conn. 839, 679 A.2d 937 (1996): "A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) Id., 848-49.
According to Elgar v. Elgar, supra, 238 Conn. 845, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence." Id. The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct."Id.
The factual issues determined by the referee involve the special defenses filed by the defendants. The referee found that the plaintiff acted with reasonable dispatch in bringing the suit and that the defendants were not prejudiced thereby. The referee CT Page 1219 also determined that the Browns did not obtain a partnership interest from Fox, but rather only an agreement to share any profits Fox took from the partnership. A review of the transcript indicates that these findings are supported by the evidence.[3]
In their motion to correct, exceptions and objections, the defendants seek to substitute their version of the facts concerning the indemnification agreement for the referee's finding that the Browns did not procure a partnership interest from Fox. This request by the defendants would require the court to retry the case and reexamine the credibility of the witnesses. This is not permitted. Argentinis v. Gould, 23 Conn. App. 9, 19,579 A.2d 1078, rev'd on other grounds, 219 Conn. 151,592 A.2d 375 (1991).
In addition to insuring that the factual findings are supported by the evidence introduced at trial, the court, in reviewing an attorney trial referee's report, must also determine whether "the conclusions reached were in accordance with the applicable law." Thermoglaze, Inc. v. Morningside Gardens, Inc.,23 Conn. App. 741, 746, 583 A.2d 1331, cert. denied,217 Conn. 811, 587 A.2d 153 (1991); see also Bernard v. Gershmann,18 Conn. App. 652, 656, 559 A.2d 829 (1989).
The only issue in this regard is whether the statute of limitations had expired before the plaintiff brought its suit on August 15, 1995. The referee concluded that the statute had not run for two reasons. First, the statute had been tolled by partial payments made after the due date of the note. Second, when the FDIC is appointed as a receiver, the plaintiff could avail itself of a federal law relating to a revised statute of limitations.
General Statutes § 42a-3-118 is the statute of limitations governing promissory notes. That statute states in relevant part: "(a) . . . an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note . . ." The statute also refers to demand notes and notes whose payment is accelerated, neither of which is applicable to the present case. "[T]he true test is to establish the time when the plaintiff first could have successfully maintained an action. . . ." Chapman v. Franford, Superior Court, judicial district of New London at New London, Docket No. 536034 (April 24, 1997, Handy, J.), citing Gaylord Hospital v. Massaro, CT Page 12205 Conn. App. 465, 467, 499 A.2d 1162 (1986).
The first time the plaintiff could successfully have started this action was on the due date of the note, November 1, 1988. Thus, the statute would have run on November 1, 1994, nearly one year before this action was commenced. The attorney trial referee, however, agreed with the plaintiff that the statute was tolled by virtue of several partial payments made by the defendants. The last payment was made on September 4, 1990. If that payment extended the statute by a new six year period, then this action, commenced in 1995, is timely.
"Partial payment of a debt which is barred by the statute of limitations removes a case from the statute provided that, under the circumstances, it constitutes an acknowledgment of the indebtedness sued upon as a then existing debt. The Statute of Limitations creates a defense to an action. It does not erase the debt. Hence, the defense can be lost by an unequivocal acknowledgment of the debt, such as a new promise, an unqualified recognition of the debt or a payment on account. Whether partial payment constitutes unequivocal acknowledgment of the whole debt from which an unconditional promise to pay can be implied thereby tolling the statute of limitations is a question for the trier of fact. As with other questions of fact, unless the determination by the trial court is clearly erroneous, it must stand." (Internal quotation marks omitted; citations omitted"). Zapolskyv. Sacks, 191 Conn. 194, 198, 464 A.2d 30 (1983).
The Supreme Court has also ruled that the running of a statute of limitations "does not destroy the debt but merely bars the remedy. This is the basis upon which part payment, acknowledgment of the debt or a new promise will toll the running of the statute, for if the debt were destroyed by it, none of these could avail in the absence of a consideration." (Citation omitted). Markham v. Smith, 119 Conn. 355, 358, 176 A. 880
(1935).
In this case, the attorney trial referee found as a fact that the partial payments tolled the statute of limitations, and there is no discernible reason to reverse this determination. Furthermore, the transcript indicates that the partial payments were made by the defendants as various condominium units at the subject premises were sold. Laurie Hartman of Consolidated Asset Recovery Corp. testified as follows: "Q. And can you tell the Court why the bank accepted the payments after the note had CT Page 1221 matured? A. If I can recall, we were led to believe that these units were going to be sold and we were going to be paid down from the sales, so we allowed to accept the payments from Heritage Square." It appears from this testimony that in making partial payments on the note when units were sold, the defendants were acknowledging the debt and justifies the plaintiff and/or its predecessor in not calling the note when due.
Even if the statute of limitations for notes had expired, the referee also referred to FIRREA as affording the plaintiff a new six year statute of limitations commencing with the FDIC's appointment as receiver on August 9, 1991. The referee agreed that, as an assignee, the plaintiff "stood in the shoes" of the FDIC, its assignor. The defendants argue, however, that this statute is "personal" to the FDIC in its capacity as receiver and for its benefit only.
12 U.S.C. § 1821 (d) (14) provides that the date on which the six-year statute of limitations begins to run is the latter of "(i) the date of the appointment of the [FDIC] as . . . receiver; or (ii) the date on which the cause of action accrues." We do not have a Connecticut case that rules directly on the applicability of FIRREA, although Georgia Receivables, Inc. v.Vinings, Superior Court, judicial district of New London at New London, Docket No. 538146, 20 CONN. L. RPTR. 30 (June 25, 1997, Handy, J.), a case involving the propriety of a summary judgment, comments on the split of authority on this subject in the federal courts.
The court points out that in Wamco, III, Ltd. v. FirstPiedmont Mortgage Corp. , 856 F. Sup. 1076 (E.D.Va. 1994), the federal court in Virginia stated that the six-year FIRREA statute did not apply as it was personal to the FDIC and not transferrable to its assignees. The court reasoned that the statute did not state that the benefit afforded the FDIC was transferrable and therefore it was not. On the other hand, as Judge Handy points out, in Federal Deposit Insurance Co. v.Bledsoe, 989 F.2d 805 (5th Cir. 1993), the Court of Appeals stated that because the statute was silent as to its assignability, the common law of assignments should be applied. The court ruled that an assignee "stood in the same shoes as the FDIC." The court added that its ruling was "consistent with the common law of assignments, furthers Congressional policy, and is supported by the cases extending the D'Oench Duhme doctrine to private assignees." Id., 811. In addition, Georgia Receivables,Inc. v. Vinings, supra, points out that a number of state CT Page 1222 courts, including California, Colorado, Kansas, and Nebraska, have agreed that FIRREA is transferrable to assignees of the FDIC.
The attorney trial referee's determination that the plaintiff was entitled to a statute of limitations that began to run when the FDIC was appointed is logical and is not to be rejected as it has a sound basis in federal law. Thus, a second reason exists to substantiate the referee's ruling against the defendants' special defense that the statute of limitations had expired when this present suit was brought.
Based on the above, it would not be proper for the court in this case to reject the referee's report regarding the liability of the defendants on the promissory note and the indemnity agreement with Fox. The referee's conclusion that the plaintiff is entitled to judgment is legally and logically consistent with the facts found by the referee. Romano v. Derby,42 Conn. App. 624, 628, 681 A.2d 387 (1996). No material error in the referee's report has been found, and there is no other sufficient reason for rendering the report unacceptable. Practice Book § 443. Hence, judgment is entered in favor of the plaintiff against the defendants, Heritage Square, Joseph P. Wagenseller, Virginia F. Wagenseller, and Anne M. Fox, jointly and severally, in the amount of $77,876 principal, with interest to October 2, 1997, in the amount of $48,405, and an attorney's fee of $11,775, totalling $138,056. Thereafter, a per diem amount of $23.2549, to the date of this judgment, is due in the amount of $2,162.71, for a total recovery due the plaintiff of $140,218.71. Judgment enters in favor of Fox against the defendants on her cross-complaint seeking indemnification for any judgment entered against her. Costs are to be taxed by the office of the chief clerk in accordance with General Statutes § 52-257 and Practice Book § 412.
So Ordered.
Dated at Stamford, Connecticut, this 5th day of January, 1998.
William B. Lewis, Judge