[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
This case was brought by the plaintiff, Metaal Transport B.V., a warehouser and freight forwarder in the Netherlands, against the defendant, Greenwich Metals, Inc., the owner of scrap brass coils. The plaintiff alleges in its complaint that on September 28, 1994, it entered into a written contract with the defendant and agreed to ship to the United States the defendant's brass coils, and that the defendant refuses to pay the shipping cost of $16,795.
The defendant admitted that the plaintiff shipped the brass coils to this country, but denied that any money was due to the plaintiff. The defendant also asserted four special defenses. The first defense asserts that the plaintiff negligently, and in breach of its contract with the defendant, mishandled the loading of defendant's 200 metric tons of brass coils in such a fashion as to damage these coils. It is further alleged that this damage necessitated repairs to the coils and additional shipping costs. In the second its contract with the defendant, mishandled the loading of defendant's 200 metric tons of brass coils in such a fashion as to damage these coils. It is further alleged that this damage necessitated repairs to the coils and additional shipping costs. In the second special defense, the defendant alleges that its contract required the plaintiff to load and ship defendant's brass coils so that they could be unloaded from a cargo ship by a CT Page 1472 forklift, but that this became impossible and that the defendant spent approximately $43,450 to offload the coils. In the third special defense, the defendant contends that this dispute should be resolved through arbitration pursuant to the "Dutch Forwarding Conditions." In the fourth special defense, the defendant argues that the claim by the plaintiff is "time-barred" by the Dutch Forwarding Conditions.
The defendant also filed a counterclaim with three counts. In the first count, the defendant alleges that the plaintiff breached the express contract with the defendant because the coils could not be offloaded by forklift as agreed but rather required an extra $43,453 to unload. In the second count of its counterclaim, the defendant contends that the plaintiff breached an implied contract that the coils could be offloaded with a forklift, which proved impossible and resulted in an additional cost of $43,453 to offload these items. The third count claims that the plaintiff's breach of an express and implied contract also constitutes negligence.
The plaintiff filed two special defenses to the counterclaim. These defenses allege that it is not responsible to the defendant for any alleged damages, and that the counterclaim by the defendant is time-barred by virtue of the Dutch Forwarding Conditions "which govern the transaction."
The case was referred to Attorney Frank W. LiVolsi, Jr., an attorney trial referee, in accordance with General Statutes §52-434 (a) and Practice Book § 19-2, formerly § 429. The attorney referee conducted a trial and then submitted a report pursuant to Practice Book § 19-4, formerly § 430A. The referee made the following findings of fact (1) the plaintiff and the defendant entered in into a written contract for the shipment of defendant's scrap brass coils from the plaintiff's warehouse in Rotterdam to a consignee in Belleforte, Pennsylvania; (2) the plaintiff loaded the coils in eleven upright shipping containers but the company that first received the coils was not able to unload the containers from the ship; (4) the goods were then offloaded by another transportation company and delivered to the ultimate destination; (5) the defendant received the full contract price for the scrap metal coils; (6) witnesses testified that the brass coils had been improperly loaded by the plaintiff, which caused the coils to be one mass of material upon arriving in this country, thus preventing unloading in the normal, conventional manner. CT Page 1473
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the defendant incurred extra costs to unload the brass coils; (2) the Dutch Forwarding Conditions did not apply to this transaction as the plaintiff submitted itself to the jurisdiction of this court by bringing suit against the defendant in this court; (3) judgment should enter in favor of the plaintiff for $16,795, the amount of the contract with the defendant; (4) judgment should enter in favor of the defendant on its counterclaim in the amount of $36,190.45; and (5) the judgments should not include interest or attorney's fees.
As authorized by Practice Book § 19-12, formerly § 438, the defendant moved to correct[1] the referee's report as follows: (1) the report should include a finding that the plaintiff agreed to load the brass coils in a careful manner but loaded them so that they became loose and unraveled; (2) because of the delay in unloading the scrap brass coils the defendant incurred two additional months of carrying costs including interest in the amount of $5,826; and (3) the referee should recommend that judgment enter only for the defendant on its counterclaim after setting off the amount due the plaintiff on its complaint.
In response to the motion to correct filed by the defendant, the attorney trial referee declined to change his recommendations. The referee did, however, comment on each item of the defendant's motion to correct and his responses can be summarized as follows: (1) the referee agreed that the defendant had been damaged by improper loading of the scrap brass coils by the plaintiff, and no further clarification on this point was needed; (2) the referee agreed that the improper loading had caused some delay in shipping the goods to the consignee; and (3) the referee could not recommend an award for carrying costs as the defendant's witness on this subject was unable to specify any such loss with a reasonable degree of probability.
In accordance with Practice Book 19-13, formerly § 439, the defendant then filed exceptions to the referee's report.[2]
The exceptions filed by the defendant reiterate its contention that because the recommended award to the defendant exceeds the recommended award to the plaintiff on its complaint, only one judgment should enter in favor of the defendant, not two judgments, one for the plaintiff for $16,795, and a judgment for CT Page 1474 the defendant for $36,190. The defendant argues that the smaller award should be off-set against the larger award and one judgment enter for the defendant for $19,395. The defendant contends that the plaintiff may well collect the full amount of its judgment, whereas the defendant may have difficulty in obtaining the full amount of its judgment of $36,190. Therefore, according to the defendant, there should be one judgment in its favor including obviously an off-set for the amount of the plaintiff's judgment.
This court's scope of review of an attorney trial referee's report was reiterated by the Supreme Court in Elgar v. Elgar,238 Conn. 839, 679 A.2d 937 (1996). There, the court held that, "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book [§ 19-17, formerly] § 443. . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) Id., 848-49.
Thus, according to Elgar v. Elgar, supra, 238 Conn. 839, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence." Id., 845. The second task is to ascertain whether "the conclusions drawn [from the findings of fact] were legally and logically correct." Id., 845.
With respect to determining whether there is support in the record for the factual findings of the referee, the plaintiff did not file a motion to correct or exceptions. Thus, the plaintiff, in effect, is agreeing that the material facts in the referee's report were based on sufficient evidence. The defendant's exception relates solely to the recommendation by the referee that judgment enter in favor of both parties, and did not include a reference to carrying costs of $5,826. CT Page 1475
Neither the plaintiff nor the defendant filed objections to the referee's report as authorized by Practice Book § 19-14, formerly § 440.[3] This means that both parties have waived any right to claim that the referee's conclusions were not properly reached on the basis of the subordinate facts that were found or that there were errors in the rulings on the admission of evidence or in other rulings. Rostenberg-Doern Co. v. Weiner,17 Conn. App. 294, 301-02, 552 A.2d 827 (1989). InRostenberg-Doern, where a party did not file objections to the referee's report, the court said that the failure to "follow the appropriate procedural guidelines" caused the court to be "precluded from reviewing [the plaintiff's] claim." Id., 302.
Since the referee's findings of fact must remain uncorrected, the only remaining issue concerns whether the referee's conclusions follow legally and logically from the underlying facts. This determination is required because a reviewing court is obliged to consider whether "the conclusions reached were in accordance with the applicable law." Thermoglaze. Inc. v.Morningside Gardens, Co., 23 Conn. App. 741, 746, 583 A.2d 1331, cert. denied, 217 Conn. 811, 587 A.2d 153 (1991). See also Practice Book (1998 Rev.) § 19-17 ("[t]he court shall render such judgment as the law requires upon the facts in the report. . . .").
The referee determined that the plaintiff was entitled to recover the shipping charges in its contract but that the defendant had been damaged by the plaintiff's improper loading of the scrap brass coils. The referee's ultimate conclusions that both parties should recover on the complaint and on the counterclaim follow legally and logically from these underlying facts. Romano v. Derby, 42 Conn. App. 624, 628, 681 A.2d 387
(1996).
Based on the standard of review outlined in Elgar v. Elgar, supra, 238 Conn. 848-49, the referee's recommendations are accepted. No material error in the referee's report has been found, and there is no other sufficient reason for rendering the report unacceptable. See Practice Book § 19-17, formerly § 443. Thus, judgment may enter for the plaintiff for $16,795, and for the defendant for $36,190. The existence of two judgments may not be a problem in that the plaintiff may well pay the defendant the difference between the two judgments, $19,395. If, on the other hand, the plaintiff attempts to execute on its judgment of $16,795, instead of paying $19,395 to the defendant, CT Page 1476 the defendant is authorized to seek postjudgment relief and this court hereby retains jurisdiction to insure that any postjudgment proceedings will reflect that the defendant is owed $19,395.
So Ordered.
Dated at Stamford, Connecticut, this 8th day of February, 1999.
___________________________ William B. Lewis, Judge