[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case, which was tried by an attorney trial referee, involves a stone wall constructed by the defendants, Thomas J. Aylard and Karen M. Aylward, who reside at 217 Country Club Road, New Canaan. The plaintiff is the town of New Canaan which seeks, among other claims for relief, an injunction "ordering the defendants to remove the stone wall from the Town right of way."
The plaintiff's amended complaint, dated January 26, 1999, contains three counts. In the first count, the plaintiff alleges that in August, 1998, the defendants begin construction of a stone wall "within the Town right of way for the public highway known as Country Club Road, in violation of Section 54-19 of the New Canaan Code."[1] In the second count of the complaint, the plaintiff alleges that the stone wall constructed on land between the defendants' property line and the traveled portion of Country Club Road constitutes a "trespass." In the third count, the town alleges that the stone wall constitutes an "obstruction or encroachment upon the Town's right of way."
The defendants denied the material allegations of the complaint and filed four special defenses. In their first special defense, the defendants allege that the zoning enforcement officer of the town and certain officials of the town's department of public works advised the defendants that they could build a stone wall in its current location "without having to obtain any permits or other administrative approvals." The defendants further allege that during the construction of the stone wall several officials of the town government inspected the wall without complaining about its location, and therefore the plaintiff is "estopped" from seeking the removal of the wall. In the second special defense, the defendants contend that section 54-19 of the New Canaan Code is unenforceable because it "exceeds the power" granted to the plaintiff by state statute and the municipal charter. In the third special defense, the defendants claim that they own the fee to the center of the highway, subject to a right of way for the public to travel, and therefore "own" CT Page 11873 the land where they constructed the stone wall. In the fourth count, the defendants assert that as owners of the land between their property line and the traveled portion of the highway, they "have the right, under statutory and common law, to construct improvements on the non-traveled property between the traveled portion of Country Club Road and the Defendant's (sic) property."
The defendants also filed what they refer to as three counterclaims, rather than a counterclaim with three counts. In any event, in the first counterclaim, the defendants allege that they constructed a stone wall "at least two feet from the edge of the paved, traveled portion" of Country Club Road; that the plaintiff then widened the traveled portion of the road to bring it up to the base of the "retaining wall;" that the plaintiff failed to provide adequate "lateral support" with respect to the untraveled portion of the road, causing soil and rocks from their property to be deposited on the traveled portion of the highway, and resulting in "a safety hazard;" that the plaintiff allowed water to accumulate on the traveled portion of the road which also causes a "safety hazard" when the weather is freezing; and that the plaintiff failed to "excavate a sufficient portion of the untraveled portion" of Country Club Road and therefore did not provide adequate "lateral support." The defendants also allege in the first count of the counterclaim that they had permission from the plaintiff town to construct a "retaining wall" on the untraveled portion of the road to "prevent erosion and to improve safety;" that the removal of the wall will cause "the unchecked erosion of soil, rocks and natural materials" onto the traveled portion of the road which in turn will cause a "safety hazard" and deprive the defendants of the right to "lateral support;" that the defendants own the untraveled portion of the road and are authorized by General Statutes § 13a-139[2] and "the common law" to "improve" land adjacent to the traveled portion of "public roads;" that the plaintiff's failure to provide adequate lateral support is impairing the defendants' use and "marketability" of their property; that they will suffer "irreparable injury" unless the plaintiff is restrained from seeking an order to remove the wall; that the plaintiff's failure to "improve and maintain" the highway after the widening thereof constitutes a violation of General Statutes § 13a-63;[3] and that pursuant to that statute they are entitled to a committee to determine the damages caused by the failure to maintain the road in an adequate manner.
In their "second counterclaim," the defendants contend that a declaratory judgment, as authorized by General Statutes § 47-31, which pertains to quieting and settling title to real property, should be utilized to determine the respective rights to the road because the plaintiff claims that the abutting owners have no rights, whereas the defendants believe that they have a fee interest in the road and the CT Page 11874 right to make improvements on the untraveled portion of the road. In the "third counterclaim," the defendants allege that there are bona fide issues in dispute regarding whether they are entitled to improve the untraveled portion of the road and whether the plaintiff is obliged to "construct a retaining wall or other lateral supporting structure" in order to prevent the "eroding or collapsing" of the untraveled portion of the highway.
In their prayers for relief, the defendants seek an injunction ordering the plaintiff to "provide adequate lateral support" for their property and to eliminate "pooling" on the traveled portion of the road, judgment pursuant to General Statutes § 47-31 and "damages." The plaintiff filed a reply to the special defenses and to the defendants' counterclaim which generally denied the material allegations of said defenses and counterclaim.
The case was referred for trial to Attorney Jules Lang, an attorney trial referee, in accordance with General Statutes § 52-434 (a) and Practice Book § 19-2A. The referee conducted a trial and submitted a report finding the following facts: (1) the defendants' southerly boundary line is 413.91 feet in length along Country Club Road; (2) Mrs. Aylward was advised by several town officials that the only requirement was that the proposed stone wall could not be over six feet in height; (3) the town's highway supervisor visited the site several times during construction but did not seek to prevent the project until on or about August 20, 1998, apparently some three weeks after construction began, when several town officials met on the site and advised the defendants that they were building beyond their property line and on town property; (4) at that point, the defendants had already spent about $25,000 to construct the stone wall in question; (5) the stone wall extends beyond the defendants' property line and between sixteen to twenty-five feet onto the shoulder or nontraveled portion of Country Club Road; (6) although the town's witnesses spoke about the wall impeding snow removal, snow could be pushed to the other side of the road and/or beyond the twin bridges across the Five Mile River; and (7) the stone wall constructed by the defendants "encroaches onto Town property," but does not impede or affect travel on the paved portion of the roadway.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) General Statutes § 13a-139 permits the defendants to construct their stone wall where it is located because the statute refers to the right of an abutting property owner to "otherwise improve" the shoulder of a town road; (2) even if General Statutes §13a-139 were to be construed to prohibit the wall, it would be "inequitable" to require the defendants to remove the stone wall because harm to the plaintiff is "slight in comparison" with the cost of removing CT Page 11875 the wall; (3) the defendants failed to prove their first special defense which claimed that the plaintiff was "estopped" from seeking the removal of the stone wall; (4) the defendants failed to prove their counterclaim; (5) the defendants "own the fee to the center line of Country Club Road as it abuts their lot" subject to the right of the public in the traveled portion of the road; (6) the public's "right of passage" is not being interfered with by the defendants' wall except with respect to some "potential difficulty in snow plowing;" (7) the plaintiff has proved that the defendants' stone wall constitutes a "trespass" as alleged in the second count of the plaintiff's complaint; (8) section 54-19 of the New Canaan Code, insofar as it prohibits certain activities on the shoulder of the road by the owner of the abutting property, "conflicts with and must give way to" General Statutes § 13a-139, and thus the defendants successfully proved their second special defense that the ordinance is unenforceable; (9) the plaintiff did not prove either its first count claiming a violation of section 54-19 of the New Canaan Code or its third count claiming that the stone wall was an obstruction or encroachment on the town's right of way; (10) since the plaintiff proved a "technical trespass" on the part of the defendants, because the wall "may impede snow removal," the plaintiff is entitled to recover nominal damages of $1 on its second count; and (11) because the plaintiff did not present any evidence of actual monetary damages on account of the possible snow removal problem, the plaintiff should be given the opportunity to do so at a subsequent hearing.
As authorized by Practice Book § 19-14, amended effective January 1, 2000,[4] both the plaintiff and the defendants filed objections to the report of the attorney trial referee. The objections by the plaintiff can be summarized as follows: (1) General Statutes § 13a-139 does not permit the defendants to construct a structure such as a stone wall on the shoulder of a town road simply because the statute allows the abutter to "otherwise improve the shoulder;" (2) section 54-19 of the New Canaan Code is specifically authorized by General Statutes § 7-148
(c)(6)(C)(ii),[5] which permits a municipality to enact ordinances to keep its roads free from encroachments and obstructions, and hence the ordinance does not have to "give way," as the referee put it, to General Statutes § 13a-139; (3) although § 13a-139 permits the cutting of brushes and weeds, and the removing of stones and rubbish, the phrase "otherwise improve[d]" does not encompass a structure such as a stone wall, which is specifically prohibited by the local ordinance, which in turn is authorized by a state statute; (4) the conclusion that the defendants would suffer more from the removal of the wall than would the town by its continuance leads to a bizarre situation where "the defendants cannot finish the wall and the plaintiff cannot have it removed," and hence a partially constructed stone wall will remain permanently along the shoulder of the road; (5) the report is CT Page 11876 contradictory because, on the one hand, it states that the defendants own the fee to the center line of the road, and on the other hand, the report finds that the defendants' wall encroaches beyond their property line onto the town's property and recommends the award of monetary damages, albeit nominal, for what the referee described as a "trespass" by the defendants; (6) the referee cited incorrectly the case of Luf v.Southbury, 188 Conn. 336, 449 A.2d 1001 (1982), for the proposition that an abutter has fee ownership to the center line or midpoint of a highway, because that case refers to a road where a town only had an easement or the right to use another person's land, whereas in the present case the town actually owns the fee, having obtained such fee interest by a land swap with another property owner;[6] and (7) the referee's conclusion that Mrs. Aylward had a reasonable basis for her belief that it was permissible to build a stone wall on the shoulder of a road is irrelevant, and moreover, she had no reasonable basis for such a belief because the director of public works, the superintendent of highways, the zoning inspector and the assistant zoning inspector all testified that they did not give her permission to build the stone wall, and any such advise must have come from "unidentified and unnamed secretarial assistants or other employees," who did not have the authority to authorize such construction.[7]
The defendants' objections to the report are that: (1) they cannot possibly be liable to the plaintiff in "trespass," as the attorney trial referee concluded, because, as the referee also determined, they own the fee to the center of the road and therefore "cannot commit a trespass on their own land;"[8] (2) the defendants have the right to improve, including by the construction of a stone wall, the land that lies between the paved or traveled portion of the road and their property line; and (3) the suggestion by the referee that the plaintiff be given a "second opportunity to offer evidence of actual damages" is in error because the plaintiff had the right at the trial to offer such evidence and failed to do so.[9]
This court's scope of review of an attorney trial referee's report was reiterated by the Supreme Court in Elgar v. Elgar, 238 Conn. 839,848-49, 679 A.2d 937 (1996). The court held in that case that: "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of attorney trial referees. See Practice Book § 443 [currently § 19-17]. . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it. CT Page 11877 or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.).
Pursuant to Elgar v. Elgar, supra, 238 Conn. 845-46, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence." Id. The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Id. The referee's factual conclusions in this case are essentially undisputed because the parties agree that the defendants constructed a stone wall on the land between their property line and the paved portion of the road. The issues in this case are therefore legal in nature, not factual.
The plaintiff claims that the case is controlled by General Statutes § 13a-139 and section 54-19 of the New Canaan Code. The defendants contend that they own the fee to the center line of Country Club Road and have the right to make improvements, including constructing a stone wall, on the portion of land between the paved road and their property.
This court agrees with the plaintiff that the resolution of this present case requires an interpretation of a statute and its relationship to an ordinance enacted by the town of New Canaan. "The court shall render such judgment as the law requires upon the facts in the report." Practice Book § 19-17(a). "The trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee. Romanov. Derby, 42 Conn. App. 624, 626, 681 A.2d 387 (1996). The question of whether a particular statute . . . applies to a given state of facts is a question of statutory interpretation . . . Statutory interpretation presents a question of law for the court." (Citations omitted; internal quotation marks omitted.) Rivera v. Fox, 20 Conn. App. 619, 621,569 A.2d 1137, cert. denied, 215 Conn. 808, 576 A.2d 538 (1990).
General Statutes § 13a-139 refers specifically to removing brush, weeds, stones and rubbish. The controversy revolves around the phrase "otherwise improve." The defendants contend that these words give them virtual carte blanche to do anything they want so long as it passes the test of representing an "improvement." The plaintiff urges a more narrow interpretation limited to objects similar to brush, weeds, stones and rubbish, and not the building of a structure such as a stone wall. Turning to the local ordinance, 54-19, the plaintiff correctly points out that its enactment is authorized by General Statutes § 7-148
(c)(6)(C)(ii). The ordinance prohibits the construction of a "fence, CT Page 11878 structure or object." This ordinance prevents the construction of a stone wall in the right of way or shoulder of a public roadway by an abutting property owner.
The defendants claim that by virtue of the common law they have fee ownership to the center line of the highway and hence can do anything they want on the shoulder except interfere with traffic on the paved portion of the road. The common law, to which the defendants refer, was in effect changed in this state by the enactment of General Statutes §13a-139, which outlines the rights of a land owner whose property abuts a highway. The abutter can make "improvements," but such improvements should not be interpreted to permit the erection of a structure, which interpretation would conflict with a municipal ordinance enacted pursuant to General Statutes § 7-148.
This court agrees with the defendants with regard to their objection to the referee's suggestion that the trial should be opened to give the plaintiff an opportunity to demonstrate that it had or is incurring actual damages as a result of the stone wall. The plaintiff claimed "damages" in its prayer for relief and had the opportunity to submit evidence in this regard but chose not to do so. It would not be proper to open the case for additional evidence at this time since it would surely violate the principal of promoting finality of litigation.
Accordingly, judgment may enter for the plaintiff and an injunction hereby issues ordering the defendants to forthwith remove the stone wall from its present location beyond their property line. The attorney trial referee referred to the $25,000 it cost to construct the wall, but no evidence was introduced regarding the cost of removal. In any event, the wall is not where it should be. It is on town property in violation of a state statute and a New Canaan ordinance. The referee also determined that Mrs. Aylward had a reasonable basis for her belief that the stone wall could be constructed in its present location, but that does not justify the fact that the wall is not on the defendants' own property.
In terms of the propriety of an injunction, "[a] decision to grant or deny an injunction must be compatible with the equities in the case."Bauer v. Waste Management of Connecticut, 239 Conn. 515, 527,686 A.2d 481 (1996). "Those equities should take into account the gravity and willfulness of the violation, as well as the potential harm." Haddam v. LaPointe, 42 Conn. App. 631, 639,680 A.2d 1010 (1996). It is also axiomatic that in the case of an analogous situation where a municipality's zoning enforcement officer seeks an injunction to enforce the zoning regulations, General Statutes § 8-12 relieves a town from proving irreparable harm and lack of an adequate remedy at law. Id., 532. CT Page 11879
In this case, the defendants checked with Planning Zoning and were advised that a zoning permit is not required for a wall that is not over six feet in height. This advise does not equate with the defendants building their wall on town property. Moreover, the defendants knew the location of their property line from the survey, but nonetheless went ahead and built the wall outside their property. Thus, the criteria for the issuance of a permanent injunction have been satisfied.
Judgment also enters in favor of the plaintiff with respect to the defendants' counterclaim as recommended by the referee.
Costs should be taxed in favor of the plaintiff by the office of this court's chief clerk.
So Ordered.
Dated at Stamford, Connecticut, this 27th day of September, 2000.
William B. Lewis, Judge Trial Referee